## Wiswall vs. Hall and wife.

The objection to the jurisdiction of the court, that the complainant has an adequate remedy at law, should be made by plea or demurrer, or should be distinctly stated in the answer of the defendant.

Where the vendor of a lot of land secretly intended to sell only a part of the lot, but succeeded in making the vendee understand that he was buying the whole lot, and only a part of the lot was included in the deed of conveyance, for which the vendee paid the vendor the whole consideration intended by him to be given for the whole lot, the court decreed that the vendor execute to the vendee a conveyance for the whole.

The wife of the vendor having united with him in the deed, but not being privy to the fraud attempted to be practiced upon the purchaser, the court refused to compel her to join in the conveyance.

As a general rule, a grant of land bounded on tide water extends only to high-water mark.

The right to erect a wharf and to receive tolls for the use thereof is a fran-
chise, and cannot be exercised by an individual citizen, except under a
grant for that purpose from the sovereign power; or by prescription,
which is supposed to have been founded on a grant, but the evidence of
which has been lost by the lapse of time.

Where the right to erect a wharf and to take tolls or wharfage is granted as
appurtenant to a lot bounded upon tide waters, it seems the right of whar-
fage, &c. will pass under the term appurtenances, in a subsequent convey-
ance of the lot.

May 28.     THE bill in this cause was filed for the purpose of settling
the right of the complainant to a wharf, and to wharfage and
dockage at the same; which wharf was erected on or adja-
cent to lot No. 22, south of and adjoining Lydius street, in the
city of Albany. The complainant claimed the wharf and
the right to wharfage, &c. under a contract of purchase from
the defendants; and under a conveyance from them, by
which they conveyed to him the lot, with the privileges and
appurtenances thereunto belonging or appertaining.

The defendants insisted that they only intended to sell to the
complainant lot No. 22 as it originally existed, and bounded
on the east by the waters of the Hudson at high-water mark.
It appeared by the documentary evidence in the case that the
lot, at the east end of which the wharf in question was erected,
was held under a conveyance executed by the corporation of
Albany to the Rev. G. Dallius, in 1687, for a tract of land call-
ed the Great Pasture, and which subsequently belonged to the
corporation of the Dutch Church. In 1791, the church con-
veyed lot No. 22 to S. Van Rensselaer, in fee, reserving a
small annual rent; and he conveyed the same to J. S. Van
Rensselaer. In August, 1797, the latter leased the lot, to
F. McCartan, in fee, at the annual rent of $125, and subject
to the rents, conditions and covenants reserved and contained
in the conveyance to S. Van Rensselaer. The lease was du-
ly assigned to the defendant, T. Hall, in 1799, who subse-
quently constructed the wharf or dock in controversy. In
September, 1803, the corporation of the city of Albany, by a
grant or conveyance, reciting the several deeds or mesne con-
veyances by which Hall derived his title to lot No. 22 from the
corporation, in consideration of the sum of $62, granted to him
and to his heirs and assigns, " the right, privileges and fran-

chises of dockage and wharfage in the port and harbor of the city, opposite to and adjoining the aforesaid lot of ground, and thirty feet, being the south half of Lydius street, with the profits, benefits and advantages thereof," reserving to the corporation the right of regulating the use of the docks and wharves, and the amount of wharfage. This conveyance also contained a covenant on the part of the grantee, his heirs and assigns, to leave a street or public highway forty feet in breadth from the eastern extremity of the dock erected or to be erected " on the said lot," and to keep the street and dock in good repair. In the summer of 1817, the complainant contracted with Hall to purchase the lot for the sum of $6000. And on the 25th of July, in the same year, Hall and wife executed a conveyance therefor to him, in which the premises are described as " lot No. 22, bounded south by lot No. 21, west by South Market street, north by Lydius street, and east by the Hudson river, as the same is described in, and has been occupied and held under a certain deed of indenture, made the 25th day of August, 1797, between P. S. Van Rensselaer and Thomas McCartan, which deed of indenture was assigned by said McCartan to Hall the 13th of July, 1799, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining ;" subject to certain mortgages and judgments against Hall, which were liens upon the property. Under the conveyance, from Hall and wife, the complainant entered into possession of the lot, including the wharf. And continued in the undisturbed enjoyment thereof, receiving dockage and wharfage for the whole front of the lot, including the south half of Lydius street, until the summer of 1828, when the present controversy arose, in consequence of a claim made by the defendant Hall to the wharf and wharfage. The bill alleged that the complainant intended to contract for the whole lot as owned and occupied by Hall and his tenants, including the right to the wharf and wharfage ; that he was ignorant of Hall's having or pretending to have any title to any part thereof, other than by or under the lease of Van Rensselaer to McCartan ; and that Hall knew the complainant supposed he was buying the whole property, including the wharf, &c.

The defendants by their answer insisted that they never intended to sell any thing more than the lot as it originally was, extending to the west shore of the river at high-water mark, excluding the wharf and the privilege of wharfage, and about 100 feet of the easternmost part of the premises as now filled in. And they stated certain reasons for supposing that the complainant so understood the bargain. The cause was heard upon pleadings and proofs.

*A. Van Vechten,* for the complainant.

*J. V. N. Yates,* for the defendants.

The Chancellor. The objection of the defendants, that the complainant has a full and adequate remedy at law if the wharf and wharfage, &c. are actually conveyed by the deed, probably comes too late. Objections to the jurisdiction of the court should be made by plea or demurrer, or should be specifically stated in the answer. But the nature of this property, and the necessity of removing the cloud upon the title, so as to enable the complainant to obtain his share of dockage, &c. from the dockmaster, would perhaps have been sufficient grounds for sustaining this bill to settle the rights of the parties, even if the objection had been made in season. I shall therefore proceed to dispose of the cause upon its merits.

From the testimony in the case, in connection with the answer of the defendants, I am satisfied that the allegation in the answer, that they did not intend to sell the wharf and the privilege of receiving wharfage, is literally true. I think it also probable that the wife executed the conveyance in good faith, supposing it did not, and also believing that Wiswall knew it did not, cover these privileges and franchises. I cannot however, bring myself to believe that Hall supposed Wiswall so understood the bargain. In the first place, it is incredible that a man of any kind of prudence or discretion would contract for an undefined fraction of a water lot, situated as this was, and with reference to what might have been the line or high-water mark twenty years before. The particularity with which Hall states the terms of his parol offers to Wiswall,

and the language he used in his instructions to Mr. Hawley when the latter was about to prepare the conveyance, are of themselves evidence that he intended to have Wiswall understand he was buying the whole premises, while Hall was himself endeavoring to have a deed prepared which would in fact only transfer his title to a moiety, in value, of the property. These studied phrases would not have been necessary, neither would they have been used, in a fair and honest bargain for a part of the premises merely. The vendor would have said to Mr. Hawley, in direct terms, "The lot I am about to sell is the land as originally conveyed by the Van Rensselaer lease, and only extends eastward as far as the shore of the river, as it then was ; the wharf which is built into the tide waters, and the right of wharfage, I hold under a different title from the corporation of Albany ; that is not intended to be included in the sale, and the conveyance must be drawn accordingly." Taking all the circumstances of the case into consideration, I cannot resist the conclusion that here was a palpable fraud attempted to be practiced upon the complainant. And as the vendor has received the full consideration which the vendee agreed to give for the whole property, the complainant is entitled to a conveyance from Hall for the whole, if the legal title to the same is not in fact conveyed by the deed of 1817. As there is no evidence that the wife was a party to the intended fraud, I cannot compel her to join in the conveyance, so as to bar her contingent right of dower. I am inclined to think, however, that the legal title to the whole of the defendants' interest in the wharf and the right of wharfage did in reality pass to the complainant by the deed of July, 1817. By referring to the deed from the corporation to Hall, it will be seen it does not profess to convey to him the lands under the water below high-water mark ; but merely the right or franchise of receiving wharfage and dockage in the port and harbor opposite his lot.

The charter of the city bounded the corporation by the Hudson river at low-water mark ; and they were expressly authorized to erect wharves, and to fill in the river to that extent. The corporation also had an express grant of the profits arising from anchorage and wharfage, at the wharf or in the

port. If a wharf had actually been erected at this place, as it now is, at the time of the conveyance to Dallius, the right of wharfage, unless expressly reserved, would probably have passed by that conveyance. But, as a general rule, a grant of lands bounded on tide waters extends only to ordinary high-water mark. And Gen. Hamilton's opinion was therefore correct, that the conveyance to Dallius gave no authority to erect a wharf to the eastward of that limit ; and of course the grantee could not acquire a right to wharfage under that deed.

The right to erect a wharf and to receive tolls for the use of the same is a franchise, and cannot be exercised by an individual, except by a grant for that purpose from the sovereign power, or by prescription, which is supposed to have been founded on a grant the evidence of which has been lost by the lapse of time. (*See Chitty on Prer.* 174.) The right to take wharfage or tolls being a charge upon the public and against common right, could not be granted, even by the crown, except upon some consideration of benefit to the public—as the erection of a wharf, the keeping of it in repair, and the like ; or in consideration of a right of way given to the public over the property of the individual to whom the toll was granted. (*Sir F. Moor's R.* 474. 1 *Term R.* 660.) The corporation, therefore, having the right under their charter to erect wharves and to take tolls for the use of the same, may grant such right to the owner of a water lot, bounded on the river, as an appurtenance to his lot. In *Colton* v. *Smith*, (*Cowp. Rep.* 47,) a prescriptive right to the franchise of taking tolls or wharfage as appurtenant to a manor was sustained. Here it is evident that the grant of the corporation to Hall, his heirs and assigns, of the right of wharfage, &c. opposite to lot No. 22, and the south half of Lydius street, was made to him as the owner of that lot and as appurtenant thereto. The power to erect a wharf is not expressly granted, but probably it is implied. If the wharf and the right of wharfage were held by Hall as appurtenant to lot No. 22, the right to both passed to the complainant, under the term appurtenances, in the deed of 1817. The reference in that deed to the lot No. 22, " as the same is described and has been occupied and held" under

the deed of August, 1797, had a very appropriate and important meaning, without rendering it necessary to imply that by the use of these terms the parties intended to exclude the wharf and right of wharfage. By referring to the last mentioned deed, it will be seen that lot No. 22, as conveyed to McCartan, and as both parties intended it should be conveyed to Wiswall, was not the whole lot as originally laid out; but one foot in breadth was taken off the south side thereof. It was the lot thus diminished, or lot No. 22, as the same was described in that deed, and as it had thus been held and occupied under the same, which was the subject of the purchase by Wiswall. And without this restriction, the covenants of warranty on the part of Hall would probably have covered this foot of land which had been excepted from the deed of 1797, or the whole of lot No. 22, as originally laid out.

To put the question as to the right of the complainant to the wharf and wharfage at rest, and to remove the cloud the defendant Hall has thrown upon the title, there must be a decree making the injunction heretofore issued perpetual against Hall, and against all persons claiming under him; but without prejudice to the right of the wife, if she should survive her husband, to proceed either at law or in equity for any relief to which she may suppose herself entitled. The defendant T. Hall must also execute to the complainant a release or conveyance, sufficient in law to transfer the legal title, which may be still vested in him, if any such there be; the conveyance to be approved of by a master. And he must also pay to the complainant his costs of this suit to be taxed.