JOSE MIGUEL MUÑIS v. PABLO DE HERRERA ET AL.

SPECIFIC PERFORMANCE OF CONTRACT, JUSTICE CAN NOT ENFORCE.—A justice of the peace has no jurisdiction to enforce specific performance of a contract to build a house upon a certain tract of land, by an alternative judgment requiring the defendant to build the house or to pay a certain sum.

ALTERNATIVE JUDGMENT.—An execution to enforce such an alternative judgment of a justice is void on its face.

EXECUTION NOT SIGNED BY JUSTICE.—An execution from a justice's court not signed by the justice, but by the sheriff to whom it is directed, is void on its face.

LEVY UNDER VOID EXECUTION, REMEDY FOR.—An execution void on its face is no protection to an officer making a levy on chattels thereunder, and he is liable therefor in replevin, trespass, or trover.

IDEM—BILL IN EQUITY WILL NOT LIE FOR.—The legal remedy for such wrong-
ful levy being complete and adequate, a bill in equity will not lie to com-
pel a restoration of the property and an account of the damages.

JURISDICTION TO PREVENT TRESPASS.—A court of equity has no jurisdiction
to interfere to prevent a trespass which is not irreparable by reason of
the character of the property, and the injury, or the irresponsibility of
the party, and for which there is an adequate remedy at law.

POSSESSION OF CHATTEL NOT INTERFERED WITH IN EQUITY, WHEN.—A
court of equity will not interfere to take personal property from one
party and give it to another before a hearing upon the bill.

APPEAL from the district court of Santa Fe county.   The
facts appear from the opinion.

*Ashurst, Watts and Jackson*, for the appellant.

*T. D. Wheaton*, for appellee.

By Court, KNAPP, J.:

Jose Miguel Muñis filed his bill in chancery against
Pablo de Herrera, Juan Gallegos, and Francisco Martinez y
Belarde, in which it is averred that he had made a contract
with Herrera and his wife, Maria Concepcion Romero, for
the purchase of a tract of land in Rio Arriba county, and
for which he was to pay twenty-eight dollars, and also build
a house at a particular place on the land of Herrera.   The
contract was made with the wife, who owned the land and
signed the agreement with the complainant.   He had paid
the twenty-eight dollars, but had not built the house, be-
cause a controversy had arisen concerning the location, but
he was ready to build it at the spot he had agreed upon, but
not where they required, and so he had refused to build it
at all.

Herrera had commenced a suit before Juan Gallegos, a
justice of the peace of Rio Arriba county, upon the contract,
which was tried by a jury, and verdict was rendered, as
averred in the bill, in favor of Muñis, upon which judgment
had been rendered for costs.   Herrera had taken no appeal
from the judgment, but he and the justice had corruptly and
infamously combined together to practice a grave fraud and
outrage upon him and his rights; and the justice had issued
an execution purporting to be based upon a judgment

against him, and placed the same in the hands of Francisco Martinez y Belarde, the sheriff of the county, who had levied the same upon a horse belonging to Muñis, worth one hundred and fifty dollars.

The execution, of which a copy is given, shows that the judgment was that Muñis should build the house according to his contract, or that he should pay ninety dollars to Herrera, and commanded the sheriff to compel him to build the house, or, in default thereof, that he be made to pay the sum of ninety dollars, by a levy upon his goods, etc. This execution is not signed or issued by the justice of the peace, but it is signed by the sheriff. The bill then denied the existence of any judgment whatever, and avers that the whole thing had been gotten up to defraud Muñis of his property. It also prayed for an injunction restraining the parties from selling the horse; that it be returned to Muñis' possession, upon his giving a bond for its forthcoming as the court should direct; that "an account be taken and stated as between the said Herrera and Gallegos, upon the one part, and the plaintiff upon the other, of the damages inflicted," and that he have a decree for the amount so found.

These are all the facts stated in the bill which it is necessary to notice. The defendants filed a general demurrer to the bill, which was overruled by the district court. Afterwards all the defendants filed answers, denying the fraud charged, and Herrera filed a cross-bill, demanding damages for the non-construction of the house. To this cross-bill there was a general demurrer interposed, which was sustained. The cause was then set down and heard upon the bill and answers, without replications, and the court found the judgment void, and made the injunction perpetual. From that decree this appeal was taken.

The first question this court is called upon to decide is, did the district court decide correctly in overruling the demurrer of the defendants to the bill of complainant? The bill avers that the execution was void, and being void it had been levied upon the plaintiff's horse, and the sheriff was threatening to sell the same. The copy given with the bill shows several fatal defects upon the face of the execution.

The judgment set forth in it shows that it was founded upon a contract to build a house, or to enforce a specific agreement concerning real estate, a matter over which the justice had no jurisdiction.   The judgment is in the alternative, to build the house or to pay ninety dollars, which would require further judicial action.   The command to the sheriff was in the same alternative form.   Authorities need not be cited to show, that the lord chancellor of England could not, with all his power of sequestration of goods and imprisonment of the delinquent, enforce such a decree if rendered by himself, and promulgated from the woolsack. The execution was not signed by the justice of the peace, or any officer authorized to issue such a writ, but by the sheriff who had it in his hands to be executed.   The rule is well settled that a writ void upon its face will not protect an officer who undertakes to execute the same, and he will render himself liable to an action of trespass if, in executing such void writ, any damages are sustained: *Savacool* v. *Boughton*, 5 Wend. 170 [S. C., 21 Am. Dec. 181]; *Mills* v. *Martin*, 19 Johns. 9, and the cases referred to in them, and the note to the latter case.

The bill in this case shows clearly that the plaintiff might have recovered the possession of his horse by an action of replevin, or its value in an action of trover or trespass *de bonis asportatis*, together with all damages he might have sustained for its caption and detention.   His remedy was, therefore, even more full and complete in an action at law than in a court of chancery.   The rule would seem to be too well settled to need a citation of authorities to establish it, that courts of chancery never interfere to prevent a trespass, where there is a full and complete remedy at common law; yet we will refer to the following: Eden on Injunctions; Mitford Pleadings; Story Eq. Jur., secs. 33–39; Lube's Equity, 6, n. 1; *Earl Bathurst* v. *Burden*, 2 Bro. C. C. 65; *Wiswall* v. *Hall*, 3 Paige, 313; *Rees* v. *Parish*, 1 McCord Ch. 59; *Bussy* v. *McKie*, 2 Id. 26 [S. C., 16 Am. Dec. 628]; *Bell* v. *Beeman*, 3 Mur. 273 [S. C., 9 Am. Dec. 604]; *Tollison* v. *West*, Harp. Eq. 93; *Samson* v. *Hunt*, 1 Root, 207; *Staniford* v. *Dewit*, Id. 317; *Beardsly* v.

*Curtice*, Id. 499; *Fitch* v. *Broomfield*, Id. 467; *Strong* v. *McDonald*, Id. 364; *Bird* v. *Holabard*, 2 Id. 35; *Pitkin* v. *Pitkin*, 7 Conn. 315 [S. C., 18 Am. Dec. 111]; *Bailey* v. *Strong*, 8 Id. 278; *Beach* v. *Norton*, 9 Id. 182; *Davis* v. *Hall*, 4 Mon. 28; *Ferguson* v. *Bullock*, 1 A. K. Marsh. 71; *Waggoner's Trustees* v. *McKinney*, Id. 480; *Burns' Heirs* v. *Rowland*, 2 Id. 232; *Cummins* v. *Boyle*, 1 J. J. Marsh. 480; *Keas' Rep.* v. *McMillan*, 2 Id. 12; *Watts* v. *Hunn*, 4 Litt. 267; *Williams* v. *Patterson*, 2 Overt. 229; *Standifer* v. *McWhorter*, 1 Stew. 532; *Andrews* v. *Solomon*, 1 Pet. C. C. 356; *Coe* v. *Turner*, 5 Conn. 86; *Hardwick* v. *Forbes*, 1 Bibb, 212; *United States* v. *Myers et al.*, 2 Brockenbrough, 516.

So, too, courts of equity do not interfere to prevent a trespass, unless it be averred and made apparent that the injury threatened to be committed will be irreparable, as the destruction of real estate, or an heirloom, whose value consists in its identity alone, or that the trespasser is irresponsible and unable to answer in damages in an action at law. Nothing of that kind is alleged in this bill, but, on the contrary, it might be safely inferred from the bill, that any one of the defendants was abundantly able to pay for a horse of the value of one hundred and fifty dollars.

The prayer of the bill is also obnoxious to a fatal objection. It asks a court of chancery to usurp the prerogatives and jurisdiction of the courts of common law, to direct and command the sheriff, one of the defendants, " to restore the said horse to the possession " of the plaintiff, he " entering into bond for the forthcoming of said horse to abide the result of this cause." Courts of equity sometimes require parties in possession of property in dispute to give bonds that they will not commit waste or destroy the property; and at other times receivers are appointed to take charge of and manage the property in dispute during the pendency of the suit; but they do not interfere to take personal property from one party and give it to the other, before a hearing upon the bill. The writ of replevin was invented to accomplish that object, and it is issued only by a court of common law jurisdiction. The bill also prayed an account be taken and stated of the damages inflicted.

Passing over the inartistic manner of pleading in the bill, in asking as if the parties were partners in trade in the horse, and seeking a dissolution and settlement of the partnership affairs, it is plain that the remedy for a trespass committed is far more adequate and perfect at common law, where the jury could give as well exemplary as actual damages for the injury inflicted, than it could possibly be in a hearing before the chancellor, who has no such power. Courts of chancery, as well as those of common law, have sufficient business which legitimately belongs to each of them, without interfering with or usurping the jurisdiction of each other. Nor will the interest of the public be at all promoted by any other blending of the practice of the two courts.

We are of opinion the district court erred in overruling the demurrer to the bill, and for that error the decree must be reversed, and the cause remanded to the district court for further proceedings, in accordance with this opinion.