MARY C. WALSH, Appellant, *v.* THE NEW YORK FLOATING DRY DOCK COMPANY, Respondent.

The provisions of the act of 1798 (chap. 80, Laws of 1798), giving to the corporation of the city of New York authority to construct piers in front of certain streets and to collect wharfage, did not vest in the city the title to the land under water between the piers.

Under the provision of the act of 1860 (chap. 254, Laws of 1860, amended by chap. 405, Laws of 1875), in relation to wharfage in the city of New York, etc., which authorizes the collection of "half the usual wharfage * * * for every vessel lying at anchor within any slip," the owner or lessee of a pier cannot maintain a claim for wharfage against a vessel

attached to an adjacent pier, although it occupies the greater part of the slip between the piers. A vessel is not lying at anchor, within the meaning of the statute, when it is fastened to a pier.

As to whether the permanent occupation of an entire slip by a vessel fastened to one pier, of such size as nearly to fill the slip, thus depriving the owner of the adjoining pier of any valuable use thereof, is an actionable injury, *quære*.

(Argued May 21, 1879; decided June 3, 1879.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, affirming a judgment in favor of defendant, entered upon a decision of the court without a jury.

This action was brought to recover wharfage.

The plaintiff's assignor, Thomas C. Burke was the grantee or lessee from the city of the wharfage accruing for the use and occupation by vessels of pier 48, East river, for the term of five years, from May 1, 1876. When the lessee entered on that date into possession of the pier, the defendant's floating dry dock lay in the slip between piers 48 and 49. It was not fastened or moored to pier 48, but was secured to the bulk-head between those piers, and also to pier 49. The floating dock was 113 feet wide by 228 feet long. It occupied the whole slip, except a strip of water six to ten feet wide between it and pier 48, and extended outwards to within about sixty-eight feet of the extremity of pier 48.

Prior to such lease defendant was lessee of pier 48 and fastened the floating dock to that pier. After that date they ceased to fasten to that pier, but still occupied the same space in the slip.

*Nathaniel C. Moak*, for appellant. The title to South street and pier 48 being in the city, the lease of the pier carried to plaintiff the waters and land under water adjoining, and the bulk-head to which plaintiff's dock was fastened. (*Huttemeier* v. *Albro*, 18 N. Y., 51; *Doyle* v. *Lord*, 64 id., 436, 437; *Voorhies* v. *Burchard*, 55 id., 98, 106; *Lampman* v. *Milks*, 21 id., 505; *Smith* v. *Mayor*, etc., 68 id., 552; *Mayor*,

*etc.*, v. *Rice*, 4 E. D. Smith, 604, 608; *Marshall* v. *Nultee*, 1 id., 301, 302; *Hays* v. *Cent. R. R. Co.*, 9 Hun, 67; *Thompson* v. *Mayor*, 11 N. Y., 120, 121.) The words "at anchor" or "lying at anchor," were used in the act of 1860 in the ordinary sense of "moored." (Sedg. on Const. of Stat. [2d ed.], 225; *James* v. *Patten*, 6 N. Y., 9; *People* v. *Utica Ins. Co.*, 15 J. R., 357; *Chamberlain* v. *Western Trans. Co.*, 45 Barb., 220; *Ex parte Easton*, 95 U. S. R., 73–75; 1 Pars. Adm., 602; *City of Albany* v. *Trowbridge*, 5 Hill, 74; 7 id., 429; *Delarquemere* v. *N. Y., etc.*, 10 J. R., 120, 124, 125; *Lindsay* v. *Jansen*, 4 Hurl. & Norm., 699; *Cockey* v. *Atkinson*, 2 Barn. & Ald., 460; *Adams* v. *Farmer*, 1 E. D. Smith, 588; *City of Sacramento* v. *New World*, 4 Cal., 41; *Foreman* v. *Free Fishers*, L. R., 4 H. L., 284; S. C., L. R., 2 Com. Pl., 713–717; *Wiswall* v. *Hall*, 3 Paige, 313; Houck on Rivers, §§ 283, 284.) The right to anchorage is usually founded upon a title or interest the lands over which the vessel rests, and a grant of anchorage passes the soil of the sea shore. (Hall on the Sea Shore [2d ed.], 18, note *o; Whitstable Fishers* v. *Foreman*, L. R., 4 H. L., 284, 285; L. R., 2 C. Pl., 713, 714; *Calmady* v. *Rowe*, 6 C. B., 891; *Ex parte Easton*, 95 U. S. R., 73–75; 1 Pars. Adm., 602; *Foreman* v. *Free Fishers*, L. R., 4 H. L., 284; Houck on Rivers, § 285; *Fish* v. *Benedict*, 7 N. Y. Wkly. Dig., 344; *Camden and Amboy R. R.* v. *Finch*, 5 Sandf., 48; *Chase* v. *Dwinal*, 7 Maine [Greenl.], 134; *Tudor* v. *New England, etc.*, 12 Cush., 554; *Wood* v. *New England, etc.*, 14 Mass., 31; *Coolidge* v. *Gray*, 8 id., 527.) Plaintiff only had a right to collect of defendant wharfage and anchorage. (*Radway* v. *Briggs*, 37 N. Y., 258; *Heany* v. *Heeney*, 2 Den., 625; *Comrs.* v. *Clark*, 33 N. Y., 436, 437; *Bolt* v. *Stennett*, 8 Term R., 606; *Allmott* v. *Inglis*, 12 East., 527.) One who, without a lease, is in occupancy of a wharf, is liable to the city for the wharfage collected. (*Mayor* v. *Hill*, 13 How. Pr., 80; *City of Balt.* v. *White*, 2 Gill [Md.], 445, 461; *Ex parte Easton*, 95 U. S. R., 73; *Schuyler* v. *Smith*, 51 N. Y., 314.) The grantee of the city took its estate and rights in the pier as

they existed on the delivery of the city's lease.  (*Van Rens-selaer* v. *Read*, 26 N. Y., 558; *Main* v. *Fethers*, 21 Barb., 646; *Van Wicklen* v. *Paulsen*, 14 id., 654; *Marshall* v. *Moseley*, 21 N. Y., 280.)  The leases under which the defendants claim gave them no rights in the bulk-head. (*Wood* v. *Hoorft*, 9 Hun, 182; *Marshall* v. *Vultee*, 1 E. D. Smith, 301, 302; *Marshall* v. *Guion*, 11 N. Y., 461; *Mayor* v. *Whitney*, 7 Barb., 487, 488.)  The dock was a vessel, within the meaning of the statutes under consideration, and as such liable to pay wharfage.  (*Decker* v. *Jaques*, 1 E. D. Smith, 80; *Adams* v. *Farmer*, id., 588; *Hecker* v. *Bal. Dock*, 24 Barb., 215–223.)

*Robert D. Benedict*, for respondent.  As defendant, during the time for which wharfage is sought to be recovered, did not make fast to plaintiff's pier it is not liable.  (*Taylor* v. *At. Mut. Ins. Co.*, 37 N. Y., 275, 282.)  If the dock had been at anchor in the slip no wharfage could have been charged by plaintiff.  (2 R. L. of 1813, 429–436; Laws of 1860, p. 416; Laws of 1870, p. 1696; Laws of 1872, p. 799; Laws of 1875, p. 482; *C. and A. R. R. Co.* v. *Finch*, 5 Sandf., 148.)  Defendant's right to have its dock made fast to the bulk-head between piers 48 and 49 carried with it the right of a riparian owner to the use of the waters in front of it.  (*Yates* v. *Milwaukee*, 10 Wall., 497; *Lyons* v. *Wardens*, etc., L. R., 1 App. Cas., 662.)

ANDREWS, J.  The plaintiff's assignor Thomas C. Burke, as lessee of pier 48, East river, acquired all the rights of the city of New York, the owner and lessor of the pier, to receive and demand wharfage for the use of the pier during the term specified in the lease.  The slip between piers 48 and 49 is not mentioned in the grant to Burke.  It does not appear that the city had title to the soil under the water of the slip. It was not granted by the Montgomery charter.  That grant embraced the land under water from high-water mark to a line 400 feet beyond low-water mark.  (Davies' Laws, 183.)

The pier in question was constructed outside of this exterior line, under the act of April 3, 1798, confirmed by subsequent statutes which authorized the city to construct piers in front of the streets and wharves referred to in the act. The preamble to the act, in connection with the evidence in the case shows that South street, adjacent to which pier 48 is located, extended to the south bounds of the lands granted by the Montgomery charter. The authority, given by the act of 1798, to the mayor, aldermen and commonalty of the city to construct piers in front of South street, did not vest in the city title to the land under water between the piers. It is unnecessary in this case to determine what title the city had to the land under water occupied by the piers constructed under the authority of the act. The only point material to be noticed here is that the lease to Burke of pier 48 did not convey or purport to convey any estate or interest in the slip or in the lands under water between piers 48 and 49. The city, so far as appears, had no proprietary interest therein and conveyed none to its lessee. But the statutes regulate the subject of wharfage and confer on the owners of piers the right to demand and receive wharfage for their use, and also for the use of slips adjacent thereto by vessels at anchor therein. The right to collect wharfage is a franchise and depends upon a grant by the sovereign power. (*Wiswall* v. *Hall*, 3 Paige, 313; Houck on Rivers, §§ 283–284.) It is given as a compensation to persons who, under the authority of law, have constructed piers and wharfs, and to remunerate them for the outlay made for the convenience and safety of vessels and the benefit conferred thereby upon commerce and navigation. (*Ex parte Easton*, 95 U. S., 73; *Mayor, etc., of Albany* v. *Trowbridge*, 5 Hill, 74.) The act of 1798 empowers the mayor, aldermen and commonalty of the city of New York to receive to their own use wharfage for all vessels that may lie at or be fastened to the piers which may be constructed under the act. (Valentine's Laws, 1288, § 5.) By the revised laws (2 Revised Laws, 429) rates of wharfage were estab-

lished — and by chapter 254 of the Laws of 1860 — which was in substance a revision of the prior laws on the subject, it was made lawful to charge and receive wharfage and dockage at the rates therein prescribed "from every vessel that uses or makes fast to any pier, wharf or bulk-head within the cities of New York and Brooklyn," and half the usual wharfage "from every vessel making fast to another vessel lying at any pier, wharf or bulk-head, and from every vessel lying at *anchor* within any slip or basin." This act for the first time gave a claim for wharfage against vessels at anchor in a slip. (DAVIES, Ch. J., in *Taylor* v. *The Atlantic Ins. Co.*, 37 N. Y., 283.) The prior statutes confined the claim to wharfage to vessels using or making fast to a pier or wharf, or vessels making fast to such vessels. It was deemed proper by the Legislature that vessels at anchor in a slip and enjoying the protection afforded by the piers, although not fastened thereto or to any other vessel, should pay half the full wharfage to the pier owners for such protection. It will be seen that two classes of cases were within the purview of the statute of 1860. *First*, the case of vessels using the piers or made fast thereto, or to another vessel lying at the pier, and *second*, the case of vessels lying at anchor in the slip. Under this act it seems to be clear that anchorage can only be collected against vessels not using or fastened to the pier or to another vessel lying thereat. A vessel is not lying at anchor, within the meaning of the statute, when it is fastened to a pier. The consequence is that the owner of a pier cannot, under the act of 1860, maintain a claim for wharfage against a vessel attached to an adjacent pier, although it occupies the greater part of the slip between the piers, for the reason that the vessel is not using his pier, and is not at anchor in the slip within the meaning of the statute. No doubt can be entertained that the vessel in the case supposed would be liable for wharfage to the wharfinger to whose pier the vessel was fastened; but we see no ground for holding that it is liable also for anchorage to the owner of the adjacent pier, under the provisions of the statute.

These considerations determine the question in this case. The act of 1860 has been amended by subsequent statutes. The last act upon the subject is chapter 405 of the Laws of 1875. But the distinction made by the act of 1860 between vessels using the pier and vessels at anchor in the slip, with the different rates of wharfage, is preserved. This action was brought, as appears from the complaint, to enforce the statutory liability for wharfage and was tried upon the theory that the floating dock was at anchor within the statute. The plaintiff, at the conclusion of the case, asked the court to decide that she was entitled to recover under the wharfage act of May 2, 1875, and excepted to the refusal of the court so to decide. There was no evidence given of the value of the use of the slip by the defendant's float-ing dock or of any damages sustained by the plaintiff there-from, for the reason manifestly that the plaintiff regarded the action as founded upon the statute. The evidence did not make out a case within the statute. The floating dock of the defendants was not in any way fastened to pier 48, but was fastened to the defendant's pier 49, and to the bulk-head, title to which was claimed by the defendant under a grant executed in 1848. The defendant, up to May 1, 1876, was lessee of pier 48, and the floating dock had been fastened to both piers (48 and 49) while the defendant occupied both. But before the lease to Burke was granted, the defendant had detached the floating dock from pier 48 and fastened it to pier 49 and the bulk-head. If it had remained fastened to pier 48 after the lease to Burke, the case would have been similar to the case of *Virginia Rulon* (13 Blatch., 519). The plaintiff cannot recover under the statute for the use by the floating dock of pier 48 because it was not lying at or fastened to that pier. She cannot recover on the theory that the floating dock was at anchor in the slip, for the reason that the proof is uncontradicted that it was fastened to pier 49 and the bulk-head. The action of the plaintiff failed, and the judgment below must be affirmed. But we do not mean to decide that the plaintiff's assignor

was without remedy. The occupation of the entire slip by the structure of the defendant, excepting a few feet adjacent to pier 48, deprived the lessee to a great extent of its valuable use by preventing access thereto by vessels on the side of the pier next to pier 49. It may very well be that the permanent appropriation of the slip by the defendant's dock, to the exclusion of any use thereof by the plaintiff's assignor, was an actionable injury. In respect to this we give no opinion. If any of the rights of the lessee of pier 48 have been infringed, the common law affords a remedy. We simply decide that this action, founded upon the statute cannot be maintained.

The judgment should be affirmed.

All concur.

Judgment affirmed.