TOWN OF PELHAM *v.* THE B. F. WOOLSEY, etc.

*(District Court, S. D. New York.   April 13, 1883.)*

1. CONSTITUTIONAL LAW—TITLE OF ACT.
    Under the constitution of the state of New York, which requires that the subject of every private or local bill shall be single and expressed in its title, it is sufficient if the title indicate the powers given in the act by reasonable implication, so that the public would not naturally be misled.   Where the title of an act was "to authorize the town to raise money to construct a town dock," *held,* that this indicated by reasonable intendment the power to charge and collect wharfage, and that the act was not in that respect unconstitutional.

2. RIGHT TO COLLECT WHARFAGE.
    The right to collect wharfage is a franchise resting only upon legislative authority.

3. SAME—MEANING OF "WHARFAGE"—WHEN CHARGEABLE.
    The town having by resolution declared that the rates of wharfage for the town dock should be "one cent per ton per day; all goods to be allowed to lie on the dock 24 hours free of charge; after 24 hours to be charged five cents per ton per day,"—*held,* that the wharfage referred to was the ordinary use of the wharf by vessels afloat in loading or unloading, or mooring for safety in the ordinary course of commerce; and that the resolution did not authorize the charge as for "wharfage" against a vessel while she lay scuttled and sunk between high and low water mark, at a distance of 10 or 15 feet from the wharf, and fastened thereto by only one of several lines, others being attached to the shore.

In Admiralty.

*Dudley R. Horton* and *H. B. Kinghorn,* for libelant.

*Scudder & Carter* and *Geo. A. Black,* for claimant.

BROWN, J.   The libel in this case was filed to recover $132 wharfage at the libelant's dock at City Island, Pelham, from January 8 to May 19, 1880, being at the rate of one dollar for each 100 tons *per diem.*   The right of the libelant to recover is contested on the ground that the act upon which the libelant's authority to collect wharfage is based is unconstitutional.   The constitution of this state (article 3, § 16) provides that "no private or local bill   *   *   *   shall embrace more than one subject, and that shall be expressed in the title."   The act in question, passed March 8, 1871, (N. Y. Sess. Laws, 1871, c. 79,) is entitled "An act to authorize the town of Pelham, in the county of Westchester, to raise money for the purpose of constructing a town dock on City Island, in said town."

The first section of the act authorizes the town auditors to construct, at an expense of not over $8,000, a public dock on City Island, to remain, when completed, the property of the town of Pelham, and to be kept and maintained in good repair at the expense of the town, and under control of the town auditors, "who shall have power to make all necessary regulations as regards dockage, and as to the sums to be paid to said town for the use thereof."

Section 2 authorizes the town auditors to issue town bonds to defray the expense of constructing said dock, payable on or before the expiration of 12 years, with semi-annual interest not exceeding 7 per cent. per annum.   Section 3 provides that the "supervisors of the county shall from time to time levy and assess upon the property and inhabitants of the town of Pelham such sums of money as it shall be necessary to raise to provide for the payment of the principal and interest of said bonds."   This act, providing for the construction and maintenance of this dock, and for raising the moneys therefor, is a local act. .  It clearly embraces but one subject; but it is contended that the whole subject is not expressed in the title of the act, and that the only purpose of the act indicated by its title is to "raise money for the purpose of *constructing* a town dock," not for maintaining it afterwards, nor to provide means for its subsequent maintenance, nor to charge dockage.   One purpose of the constitutional provision referred to was to prevent secret or fraudulent legislation, and to prevent the legislature or people from being misled by the title of any local or private act, and that reasonable notice of the object of the bill should be given by its title.   It is, therefore, not sufficient

that 'the subject of the act be single; it must be expressed in the title. *Town of Fishkill* v. *Fishkill, etc., Co.* 22 Barb. 634, 641; *People* v. *Briggs,* 50 N. Y. 553, 561; *In re Blodgett,* 89 N. Y. 392; *People* v. *O'Brien,* 38 N. Y. 193.

In the above cases, and in others in which acts of the legislature have been held void for not expressing the subject involved in the litigation, the distinction between the matter embraced in the body of the act and that indicated by the title has been broad and well defined; in all of them the title of the act furnished no indication of the particular matter objected to in the body of the act. The nearest approach to the present case, to which I have been referred, is that of *People* v. *Com'rs of Palatine,* 53 Barb. 70, where an act entitled an act "to regulate" a road, was held not a sufficient expression of the authority contained in the body of the act to alter and reduce the width of the road, and to donate the excluded land to the adjoining owners. POTTER, J., in that case, regarded the title as intentionally concealing this purpose, and as conceived in fraud.

In the case of *People* v. *Allen,* 42 N. Y. 404, an act entitled "An act to incorporate the Schenectady Astronomical Observatory" was held not sufficient to express in its title one of the provisions of the act, which made it the duty of the state to make a gift or loan of money to supply means to build the observatory, and because that is no proper part of an act creating an incorporation or defining its powers. The court say: "The title of the act in question was deceptive, and calculated to mislead all concerned in regard to the main purpose of it, which was to obtain $60,000 from the treasury without any adequate security for its repayment."

On the other hand, *In the Matter of the Public Parks,* 86 N. Y. 437, it was held that an act entitled "An act to provide for the surveying, laying out, and monumenting certain portions of the city and county of New York, and to provide means therefor," was sufficient to include the *opening* of streets and proceedings to acquire and pay for the land taken for that purpose. The court say:

"The words 'laying out' must be interpreted in a broad and liberal sense, * * * and may be regarded as covering the opening, for without such opening the laying out would be of no avail. The laying out is the main thing to be done, and, as a part of the subject, necessarily comprehends the opening, which is absolutely essential before the completion of the work. * * * The title should fairly and reasonably announce the subject, and so long as it is a single one, and the various provisions thereof have respect to and relate to the same, and legitimately tend to accomplish the object to be

attained, it is enough to satisfy the requirements of the constitution. \* \* \* It is a sufficient compliance with its terms if this is done fairly, and in such manner as to convey to the mind an indication of the subject to which it relates." See, also, *In re Upson*, 89 N. Y. 67.

In the present case, it may be said, it is true that, strictly, the maintenance of this dock, or the power "to keep and maintain the same in good repair at the expense of the town," is not identically the same as "constructing the dock" spoken of in the title. No one, however, could imagine that the dock was to be abandoned by the town the moment its original construction was completed. Subsequent repair is necessary in the nature of the case; and authority to construct the dock would, therefore, in a general sense, seem to imply and include the power to keep it constructed by means of necessary repairs. So that the public cannot, I think, be reasonably said to be misled as to the existence of this power in the body of the act through the omission of any more specific mention of it in the title, any more than in the cases last above quoted. By the nature of the case, it is a necessary incident to the general purpose indicated in the construction of the dock, and is reasonably to be inferred therefrom. If it were necessary for me, therefore, to pass upon that branch of the act, I should not feel warranted in holding the act unconstitutional as respects the power of maintaining the dock in repair, and of charging dockage as a means of raising money for that purpose.

But there is another view of the act, and of its title, under which the right to charge dockage, at least for the present, should be sustained. The title of this act distinctly states the authority to raise money for the purpose of "constructing a dock;" the body of the act authorizes the issue of bonds therefor, and requires such taxation as is necessary for their payment; and it also authorizes the town to make regulations as respects dockage. There is nothing in the act which declares that the charges for dockage shall be applied to the maintenance of the dock, rather than to the payment of the principal or interest of the bonds issued for its construction; and there is no evidence in the case which shows that the wharfage sued for is to be applied to the one rather than to the other. The town would, therefore, have a right, even according to the purpose expressed in the title, to charge for dockage and to apply the sums collected in reduction of taxation for the principal and interest of the bonds which are not yet matured.

This objection should, therefore, be overruled.

Prior to the filing of the present libel, John P. Hawkins, who has intervened for his interest, and contests the libelant's claim, had filed his own libel *in rem* against the schooner on December 9, 1880, to enforce an alleged lien upon her as a shipwright for repairs. His lien was sustained by this court, (*The B. F. Woolsey*, 7 FED. REP. 108,) and a decree in his favor therein has been entered for the sum of $1,029.19, damages and costs, on August 29, 1881. Pending that suit the vessel was sold by order in that cause for the gross sum of $525, which has been paid into the registry of the court. During the first few days of the period, between January 8 and May 18, 1880, for which the present claim of wharfage is made, the schooner was moored along-side of the dock; on the first day at the end of the pier, but afterwards moved up near to the shore. The pier was 400 feet long, and the schooner 94 feet; and the dock ran parallel to the ways used by Hawkins in connection with his ship-yard, and about 80 feet southerly from it. The schooner was at that time in litigation, there being two or three other suits pending in respect to her. After breaking loose from her moorings once or twice, she was brought nearer shore between high and low water mark and scuttled. After the first week of the period for which wharfage is claimed, she lay, as I find from the evidence, from 10 to 15 feet from the dock, aground, scuttled, and entirely out of the water at low tide, fastened in part by lines connected with an anchor on shore, and in part by lines or chains fastened to some part of the pier. She remained thus during all the rest of the period claimed, after the first week, and so continued until sold by the marshal under the order of this court. If this claim for wharfage is sustained while she was thus scuttled and sunk, a similar claim would seem to exist against the proceeds of sale for the subsequent period till sale, which would exceed her whole net proceeds.

In the case of *Taylor* v. *The Joseph Walker*, 17 Leg. Int. 255, it was held that the admiralty cannot enforce a claim for wharfage for the period during which the vessel lay sunk, and therefore not supplied with wharfage services. In the case of *Taylor* v. *Mut. Ins. Co.* 37 N. Y. 275; 9 Bosw. 369, it was held that wharfage could not be claimed in respect to a ship sunk 30 feet under water. In the latter case, indeed, the sunken vessel was not fastened to the wharf, though occupying and impeding the use of the adjacent slip.

The Woolsey, in this case, though partly made fast by lines extending to the dock or some part of it, certainly did not have the benefit of wharfage in the ordinary sense. Wharfage, as defined in the Cy-

clopedia of Commerce and Webster's Dictionary, is "the fee paid for loading goods on a wharf or for shipping them off." But it also may clearly include the use of a wharf while lying along-side for protection. But the term "wharfage" is certainly usually applied only to vessels afloat and enjoying some substantial benefits, either of protection or safety, or in the loading or unloading of cargo.

The resolution of the board of town auditors, under which the present claim for wharfage is made, was passed June 16, 1874, and is in these words:

"Resolved, that the rates of wharfage for the town dock shall be as follows: All vessels of 100 tons and under to be charged 50 cents per day; all vessels over 100 tons to be charged one cent per ton per day; steam-vessels to be charged 50 cents each landing; all goods to be allowed to lay on the dock 24 hours free of charge; after 24 hours to be charged five cents per ton for every 24 hours thereafter."

The wharfage referred to in this resolution would seem to refer to wharfage in the ordinary sense of that term. It does not appear reasonably to embrace such a case as this, where the vessel enjoyed none of the ordinary benefits or uses of the wharf for the purposes of commerce or navigation, but lay aground at a distance from it, scuttled, and attached to it by one or two only of several lines. The right to collect wharfage is a franchise, and depends upon a grant by the sovereign power. *Wiswall* v. *Hall*, 3 Paige, 313; 14 N. Y. 523; 77 N. Y. 452.

The legislative acts regulating wharfage in the port of New York, and along the Hudson, allow a charge of half full wharfage rates where a vessel is made fast to another vessel moored to the wharf, and half rates, also, for anchorage in the slips. These charges rest upon express statutory authority. Laws 1860, c. 254; Laws 1875, c. 405; *Walsh* v. *N. Y. Floating Dry-dock Co.* 77 N. Y. 448, 452–3.

The libelant, by the authority conferred by the act of 1871, might doubtless pass resolutions imposing reasonable charges upon vessels running lines to the dock under any circumstances, though not alongside. But no charge can be claimed here except such as has been ordered by the resolution above quoted, and that is for "wharfage," which should be construed in the ordinary sense of that word. If, in the crowded docks of this city, only half fees are charged for making fast to a dock when not along-side, and that by special provision of law, it can scarcely be supposed that at the dock in Pelham it would be designed to make the mere fastening of a line from a vessel

scuttled and sunk, and not along-side the wharf, chargeable with full wharfage rates, the same as for a vessel along-side and using the wharf in the ordinary ways of commerce for loading or unloading, or riding in safety afloat. I do not think the mere stretching of a line to the dock, under these circumstances, constitutes such wharfage as is referred to or intended in the resolution, and it should not be charged for as such.

I allow, therefore, the sum of $9.24 for one week, at the rate of one cent per ton, with interest, $1.62, making $10.86, with costs, and I disallow the residue of the claim. Judgment may be entered for the libelant accordingly.

---

"Wharfage is a charge for the use of a wharf, made by the owner therefor, by way of rent or compensation." *Parkersburg & Ohio River Transp. Co.* v. *City of Parkersburg*, 2 Sup. Ct. Rep. 732.—[ED.