Frank Flandreau, Respondent, *v.* Philip Elsworth, Appellant.

1. Wharfage. The right to collect wharfage rests upon statute ; it is a franchise dependent upon a grant from the sovereign power.

2. Collection of Wharfage for Unlawful Occupation of Wharf — Mandamus. The fact that a lessee from the city of New York of the right to collect wharfage on a bulkhead has, by mandamus proceedings against the city authorities, secured the removal of a floating structure of a third party, moored to the bulkhead at the commencement of the lessee's term, on the ground that it unlawfully permanently prevented the use of the bulkhead for the purposes of navigation and commerce, does not prevent the lessee from recovering wharfage for such structure from the commencement of his term until the removal, provided the statute authorizing the collection of wharfage applies to the structure.

3. New York City Consolidation Act — Oyster Barges. In the section of the New York City Consolidation Act which authorizes the collection of wharfage and fixes the rates thereof (L. 1882, ch. 410, § 798), the clause, " and from every vessel or floating structure, other than those above named, or used for transportation of freight or passengers, double the first above rates," is to be construed as reading " or *other than those* used for transportation of freight or passengers," and applies to the permanently moored floating structures known as oyster barges.

4. Tonnage — Evidence. In an action to collect wharfage for an oyster barge, it is proper to prove by an expert the tonnage of the hull of the barge, as a basis of wharfage.

5. Application of Statute — Question of Law. When the character of a floating structure is not disputed, the question whether it is within the statute for the collection of wharfage is one of law.

*Flandreau* v. *Elsworth,* 9 Misc. Rep. 340, affirmed.

(Argued December 18, 1896; decided January 19, 1897.)

Appeal from a judgment of the General Term of the Superior Court of the city of New York, entered August 14, 1894, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*David McClure* for appellant. The right to collect wharfage is a franchise, and depends wholly upon express provisions of

60

law. (*The Geneva*, 16 Fed. Rep. 876; *Taylor* v. *A. M. Ins. Co.*, 37 N. Y. 275; *The G. E. Berry*, 25 Fed. Rep. 780; *Town of Pelham* v. *Woolsey*, 16 Fed. Rep. 423; *Wiswall* v. *Hall*, 3 Paige, 313; *Davis* v. *Mayor, etc.*, 14 N. Y. 533; *Walsh* v. *N. Y. F. D. D. Co.*, 77 N. Y. 452; *Radway* v. *Briggs*, 37 N. Y. 257; *Comrs. of Pilots* v. *Clark*, 33 N. Y. 264; *Taylor* v. *Beebe*, 3 Robt. 268; *Warren* v. *McDiarmid*, 34 How. 304; *Woodruff* v. *One Covered Scow*, 30 Fed. Rep. 289.) There is no provision of law which authorizes the collection of wharfage from structures such as this oyster house. (*Woodruff* v. *One Covered Scow*, 30 Fed. Rep. 269; *Ruddiman* v. *A Scow Platform*, 38 Fed. Rep. 158; *Cope* v. *V. D. D. Co.*, 119 U. S. 625; *Langdon* v. *Mayor, etc.*, 93 N. Y. 151; *Roome* v. *Phillips*, 24 N. Y. 463; *Brown* v. *Maryland*, 12 Wheat. 419.) The right of wharfage under section 798 is to be determined by the tonnage, and the tonnage by an official admeasurement in accordance with the United States regulations of register and enrollment. This was not, and could not have been, resorted to in the case at bar. (L. 1882, ch. 410, § 798; L. 1877, ch. 315; *The Craigendoran*, 31 Fed. Rep. 87; *Roberts* v. *Opdyke*, 40 N. Y. 262; U. S. R. S. § 4153; *State Tonnage Tax Cases*, 12 Wall. 204.)

*Edmund Luis Mooney* and *Charles Blandy* for respondent. The respondent was entitled to recover, under the express terms of the statute, the amount for which a verdict was directed. (L. 1882, ch. 410, § 798.) The barge in question is a floating structure within the meaning of the statute. (L. 1882, ch. 410, §§ 798, 799; *Woodruff* v. *One Covered Scow*, 30 Fed. Rep. 269; *Ruddiman* v. *A Scow Platform*, 38 Fed. Rep. 158; 23 Am. & Eng. Ency. of Law, 315, 319, 370; L. 1891, ch. 359.) The tonnage of the floating structure in question was properly proven. (*The Craigendoran*, 31 Fed. Rep. 88.) The respondent was entitled to recover upon proof that the structure was moored to the bulkhead, and without proof that it was so moored by his express permission. (2 R. S. ch. 1, tit. 2, art. 4, § 146; L. 1882, ch. 410, § 798; *Birch-*

*all* v. *Barge*, 27 Fed. Rep. 472 ; *Spotswood* v. *Matthews*, 31 Fed. Rep. 619 ; *De Barry* v. *J. R. Co.*, 40 Fed. Rep. 392; *Heron* v. *Marchioness*, 42 Fed. Rep. 173 ; 40 Fed. Rep. 330 ; *Town of Pelham* v. *Woolsey*, 16 Fed. Rep. 423 ; *Transportation Co.* v. *Parkersburg*, 107 U. S. 691 ; *Packet Co.* v. *Keokuk*, 95 U. S. 80 ; *Town of Pelham* v. *Berry*, 25 Fed. Rep. 781 ; *Walsh* v. *N. Y. F. D. D. Co.*, 77 N. Y. 448.) The appellant's motion to dismiss the complaint, upon the ground that plaintiff could not collect wharfage because the structure was a hindrance to commerce and, therefore, unlawful, was properly denied. (*Honegger* v. *Wettstein*, 94 N. Y. 252, 259 ; *De Baute* v. *Curiel*, 21 N. Y. Supp. 617 ; *S. P. Co.* v. *Monheimer*, 9 J. & S. 184 ; *Boswell* v. *Welshoefer*, 9 Daly, 196 ; *Milbank* v. *Jones*, 127 N. Y. 370 ; *Crane* v. *Powell*, 139 N. Y. 379 ; *Vail* v. *B. R. R. Co.*, 147 N. Y. 377, 380 ; *Kenney* v. *Maseman*, 14 Daly, 379 ; 120 N. Y. 644 ; *Mayor, etc.*, v. *Ketchum*, 67 How. Pr. 161 ; *Brazill* v. *Isham*, 12 N. Y. 9.) The appellant's motion to dismiss the complaint, upon the ground that the appellant had been evicted, was properly denied. (*Vernam* v. *Smith*, 15 N. Y. 327.) The appellant's motion for leave to go to the jury was properly denied. (*Mayer* v. *Dean*, 115 N. Y. 556 ; *Muller* v. *McKesson*, 73 N. Y. 195 ; *O'Neill* v. *James*, 43 N. Y. 84 ; *Williams* v. *Walker*, 9 N. Y. S. R. 60 ; Baylies Trial Practice, 227.)

BARTLETT, J. This action was brought to recover wharfage. The plaintiff was the lessee or assignee of the city of New York of the right to collect wharfage on three hundred feet of bulkhead northerly to the approach of Pier New 47, North river for the term of two years from the first day of May, 1890, at the annual rental of $10,250. This instrument of transfer assigned " all and singular of the wharfage which may arise, accrue, or become due for the use and occupation in the manner and at the rates prescribed by law," of the bulkhead in question.

The defendant kept moored to a portion of the bulkhead a

floating structure known as an oyster barge, from the first day of May, 1890, until the 8th day of November, 1890.

This action is brought to recover wharfage accruing during that period, at the rate prescribed by section 798 of the Consolidation Act. (Chapter 410, Laws of 1882.)

The facts in this case are practically undisputed, and the defense rests mainly upon the contention that section 798 of the Consolidation Act does not apply to the defendant's floating structure known as an oyster barge, and that, consequently, there is no provision of law which authorizes plaintiff to collect wharfage of defendant.

The defendant, in his motion to dismiss the complaint, claimed that the plaintiff having compelled the commissioners of docks of the city of New York, by mandamus, to put him in possession of the bulkhead leased of the city of New York, for the purpose of collecting wharfage, is precluded from bringing this action. This point may as well be disposed of before considering the important question in the case.

It seems that there were some fourteen floating structures known as oyster barges, including the one owned by defendant, which were moored to the bulkhead in question on and after the first day of May, 1890, under arrangement with a previous lessee or assignee of the right to collect wharfage, whose lease expired May 1st, 1890.

The plaintiff in this emergency obtained a writ of peremptory mandamus commanding the commissioners of docks of the city of New York to prevent the permanent occupancy of the bulkhead by such floating structures, and to place him in actual control, so that he might collect wharfage.

This was finally accomplished on the 8th of November, 1890, and the defendant is sued for wharfage from May 1st, 1890, to that date.

The defendant, over plaintiff's objection and exception, put in evidence the petition, order to show cause and peremptory writ of mandamus in the proceeding referred to, and proved by defendant that he removed his floating structure after writ-

ten notice from the dock commissioners that the mandamus had issued, and requiring him to vacate within five days.

The defendant's contention is that as the plaintiff had secured the removal of these floating structures on the ground that they unlawfully prevented, permanently, the use of the bulkhead for all purposes of navigation or commerce, it estops him from collecting wharfage during the time defendant held over and occupied a portion of the bulkhead after May 1st, 1890.

The mandamus proceeding worked no such result, even if defendant was in a position to invoke it.

The right to collect wharfage rests upon the statute; it is a franchise dependent upon a grant from the sovereign power.

In *Walsh* v. *N. Y. Floating Dry Dock Co.* (77 N. Y. 448, 452) this court said, Judge ANDREWS writing the opinion:

" The right to collect wharfage is a franchise and depends upon a grant by the sovereign power. ( *Wiswall* v. *Hall*, 3 Paige, 313 ; Houck on Rivers, §§ 283, 284.) It is given as a compensation to persons who, under the authority of law, have constructed piers and wharfs, and to remunerate them for the outlay made for the convenience and safety of vessels and the benefit conferred thereby upon commerce and navigation. ( *Ex parte Easton*, 95 U. S. 73 ; *Mayor, etc., of Albany* v. *Trowbridge*, 5 Hill, 74.) "

The statute provides that every vessel that uses or makes fast to any pier, wharf or bulkhead within the city shall pay wharfage at a given rate per day calculated upon tons burden, and certain floating structures double that rate. (Consolidation Act, § 798.)

It was competent for the plaintiff to compel the city of New York to place him in possession of the bulkhead, and there was nothing in the nature of that proceeding which prevented wharfage accruing under the statute against defendant's floating structure.

We have deemed it better to consider this point on the merits, although it was a complete answer to the competency of the mandamus record that defendant was not a party to

that proceeding; also that the claimed eviction was not set up in the answer.

No contract relation was proved between plaintiff and defendant, either express or implied, and the plaintiff seeks the enforcement of a purely statutory right, founded upon public policy, designed to benefit commerce and navigation.

The plaintiff, under the peculiar circumstances of this case, had no action at law for damages, as defendant had violated no contract, as none existed, and plaintiff's statutory remedy was complete if it be determined that the statute authorizing the collection of wharfage applies to the floating structure of the defendant.

This brings us to the consideration of the important question in this case, whether the Consolidation Act (§ 798) applies to the defendant's barge.

The complaint alleges that the defendant moored and kept moored to the bulkhead a certain floating structure known as an oyster barge.

The answer states, in substance, among other averments, that, for a number of years prior to May 1st, 1890, the place at which the barge of this defendant was moored was used exclusively for the purpose of the oyster business, and that other barges of a similar character were moored to the bulkhead.

There is no conflict of evidence as to the character of this barge and the purposes for which it was used.

The hull was seventy-four feet long, seventeen feet wide, calked, and rose and fell with the tide. On this hull was constructed a structure of two stories, the width of the hull and six feet shorter, with a flat roof; these stories were seven or eight feet high. The manner in which she was moored to the dock showed her to be a floating structure; she was boarded by a gang plank or platform working on a hinge, and the boom was in some sort of an adjustable joint or socket. The defendant's barge, and others of a similar character, were moored endwise to the bulkhead.

These barges were used in conducting the oyster business,

the boatmen who brought oysters to the city selling them to the owners of these floating structures and discharging their cargoes on board. It is admitted that defendant's barge was not technically a vessel as described in the first portion of the section we are about to consider, nor was she entitled to a registered tonnage under the statutes of the United States for the regulation of commerce and navigation. It is admitted this barge was nothing like a ship; had no means of propulsion, rudder, sails, mast, or deck. It is undisputed that she was a floating structure and was capable of being towed from one point to another, although it is not claimed she was calculated to encounter rough water in safety, or transport freight or passengers as a regular business.

Section 798 of the Consolidation Act, so far as material, reads as follows, viz. :

" It shall be lawful to charge and receive within the city of New York wharfage and dockage at the following rates, namely : From every vessel that uses or makes fast to any pier, wharf, or bulkhead within said city  *  *  *  for every day, or part of day  *  *  *  as follows : From every vessel of two hundred tons burden and under, two cents per ton  *  *  *  and from every vessel or floating structure, other than those above named, or used for transportation of freight or passengers, double the first above rates, except that floating grain elevators shall pay one-half the first above rates."

The stress of this case is upon the construction to be given the words " vessel or floating structure, other than those above named, or used for transportation of freight or passengers."

This matter of construction has been elaborately and learnedly argued by counsel on both sides of the case, but it is impossible within the limits of an opinion to comment in detail upon the various points discussed. It must be admitted that the sentence under construction is imperfect and to some extent ambiguous.

The counsel for the defendant reaches the conclusion that this sentence should be read in one of the following ways, viz. : " Every vessel or floating structure other than those

above named, *and* used for the transportation of freight and passengers," or by omitting the word "and" before the word "used" — which comes to the same result.

It will be observed that in either case the defendant's counsel does away with the word "or" before the word "used" in the statute as it stands, it being his contention that the legislature was only dealing with floating structures used for the transportation of freight or passengers.

We are unable to adopt this construction of the statute, and are of opinion the sentence presents the case of an evident ellipsis or omission which must be supplied, taking into consideration the circumstances under which the statute was framed and the situation with which the legislature had to deal. The section had already dealt with vessels employed in commerce and navigation engaged in the transportation of freight or passengers and entitled to a tonnage register, and it then obviously sought to include vessels or floating structures not used for the transportation of freight or passengers. The proper reading of the sentence is as follows, viz. :

" And every vessel or floating structure, other than those above named, or *other than those* used for transportation of freight or passengers, double the first above rates." We interpolate the words " other than those " immediately before the word " used."

The legislature, clearly, did not intend to impose double rates of wharfage on vessels engaged in the transportation of freight or passengers, but floating structures permanently moored to a pier or bulkhead might well be compelled to pay double rates. This construction is in accord with public policy as the law favors commerce and navigation.

In May, 1891, and after the plaintiff's mandamus proceedings against the city of New York, the legislature amended section 799 of the Consolidation Act, which deals with vessels in the clam and oyster trade, as follows, viz. :

" The department of docks may grant permits for vessels or floating structures engaged in the oyster business and used for the receipt, preparation and vending of oysters and other

shellfish to remain continuously moored to any of the docks, piers and bulkheads within the city and county of New York not otherwise specially appropriated by law to the sole use of other kinds of commerce, upon such terms as to wharfage and otherwise, and subject to such regulations as said department may prescribe."

This statute is significant, both in the language employed and its general import, when taken in connection with the section we are now considering.

It is further insisted on behalf of the defendant that it was improper for plaintiff to prove by an expert the tonnage of the hull of defendant's oyster barge.

As this floating structure was to pay double the wharfage rates of vessels engaged in the transportation of freight or passengers based on tons burden, and as it was not entitled to a registered tonnage under the United States statutes, the mode of proof adopted was proper and necessary. The expert sworn was shown to be thoroughly competent to testify in the premises.

There was no question for the jury in this case.

The learned counsel for the defendant insists that the nature of the craft this floating structure was and whether it came within the terms of the statute was a question of fact.

The character of the floating structure was not disputed, and it was a question of law upon undisputed facts whether it was within the provisions of the statute as to the collection of wharfage.

It is further insisted that the question should have been submitted to the jury whether any actual measurement had ever been made by plaintiff's expert witness of the hull of this oyster barge. The fact of such measurement rests upon uncontradicted evidence.

If this were not so, however, the defendant is in no position to urge that it was error not to have submitted the question to the jury. At the close of the evidence the defendant asked for a directed verdict in his favor, and after the motion was

61

denied, he asked to go to the jury upon the questions of fact arising on the evidence in the case, which motion was also denied.

The failure to state any particular question of fact he desired submitted to the jury renders his exception to this ruling of no avail. (*Mayer* v. *Dean*, 115 N. Y. 559; *Muller* v. *McKesson*, 73 N. Y. 195; *O'Neill* v. *James*, 43 N. Y. 93.)

After these motions on behalf of the defendant were made and denied, the plaintiff's counsel asked the court to direct a verdict in plaintiff's favor for a certain sum and interest, which was granted.

The defendant did not except to this ruling, but moved to set aside the verdict and for a new trial upon all the grounds specified in the Code. This motion was denied and exception taken.

The judgment and order appealed from should be affirmed, with costs.

All concur, except GRAY, O'BRIEN and HAIGHT, JJ., dissenting.

Judgment and order affirmed.