Denio, J.
 

 I am prepared to concur with the supreme court in its conclusions upon the matters of fact, as they are stated in the opinion delivered by Mr. Justice Harris, before whom the action was tried. According to that opinion, which I think is sustained by the testimony, the defendant Joseph 0. Hasbrouck, in the spring of 1846, applied to the -complainant for a loan of $12,000, upon the security of certain real estate which Hasbrouck owned in the county of Ulster, and which he offered to mortgage to the plaintiff. It was understood between them that the real estate to be mortgaged was the same which had been conveyed to Hasbrouck by the Bank of Poughkeepsie, and during the negotiations for the loan Hasbrouck produced and delivered to the counsel for the plaintiff the conveyance executed by that bank to him, and the mortgage ultimately given to the plaintiff was copied, as to the description of the premises, from that deed. In this deed the premises are described in a manner which would convey no precise idea of their particular boundaries to a person not acquainted with the locality, nor even to such a person unless he had traced the lines on the spot with a chain and compass, or they had been pointed out to him. The description concluded with a statement that the land conveyed and described contained sixty-eight acres and sixty-nine hundredths of an acre, and there was excepted from this, two acres and five-tenths of an acre, stated to have formerly belonged to James McCullough. During the negotiations, and before the plaintiff had advanced to Hasbrouck any part of the money, the latter exhibited and delivered to the plaintiff, two several appraisements of the real estate proposed to be mortgaged, one signed by Samuel Johnson and Martinas Millspaugh, and the other by Willett Linderman. The first was headed,
 
 “
 
 A statement of property owned by Joseph 0. Hasbrouck in the town of Hew Paltz,” and foots at $31,300; and
 
 *580
 
 the other was entitled,
 
 “
 
 A statement of real estate owned by Joseph 0. Hasbrouek, in Tuthilltown, Ulster county, Hew-York,” and the aggregate of the items in this paper was §27,000. Each statement estimated the land separately, without the buildings, _ as being about seventy acres, and worth §7000. The remainder of each statement consists of a separate valuation of the various buildings on the land, consisting of manufactories, mills, hotel and dwellings of various kinds. The two statements are each designed to embrace the same property, some of the buildings being entered under different names. Tuthilltown is understood to be the name of a village which is situated in the town of Hew Paltz. Annexed to these appraisements were two other certificates, signed respectively by J. O. Linderman and E. P. Benjamin. In one there is an estimate of “ the real estate in land owned by the said Joseph O. Hasbrouek in Tuthilltown,” and the other speaks of the value of
 
 “
 
 the property now owned by one Joseph 0. Hasbrouek in Tuthilltown.” A portion of the erections thus appraised, seven or more in number, and embracing a tannery, mill and yard, and valued together, according to the certificate of value which states the lowest prices, at §6500, did not in truth stand on the premises conveyed to Hasbrouek by the Bank of Poughkeepsie, but are two pieces of land immediately adjoining, one containing two and an half acres, and the other one acre of land; and consequently were not" embraced in the plaintiff’s mortgage. Prior to the payment to Hasbrouek of the whole amount loaned, and when §1336.83 remained to be advanced, Hasbrouek, at the instance of the plaintiff, signed a statement appended to the certificates of value, affirming in positive terms that all the property, mill privileges, buildings, <fcc., mentioned and valued in the certificates of value which hav'e been mentioned, were covered and intended to be covered by the mortgage which had been executed to the plaintiff,
 
 “
 
 being,” it was added,
 
 “
 
 upon the land purchased of the Bank of Poughkeepsie, 20th May, 1839,” and that “ they were offered as secu--' rity for the said loan when it was applied for.” The plaintiff required as a condition to the loan, and which was assented to
 
 *581
 
 by Hasbrouck, that the latter should procure policies of insurance against fire, and Hasbrouck procured and assigned to the plaintiff such policies in respect to the buildings on the small pieces of land, as well as in regard to those on the premises purchased of the Bank of Poughkeepsie, and included in the plaintiff’s mortgage. There are a few other circumstances less material than those which have been stated, but having in a slighter degree the same tendency. The supreme court concluded from these facts, and all the evidence in the case, that Hasbrouck, by the means which have been referred to, induced the plaintiff to believe that the buildings and improvements standing upon the small parcels of land, were in fact a part of the premises described in the mortgage, and that the plaintiff was actually made to believe that his mortgage covered all the property described in the certificates of valuation; and that in this respect the plaintiff was deceived and defrauded. Agreeing entirely with the result of the examination of the learned justice of the supreme court in this respect, and thinking it warranted by the evidence, I do not consider it necessary to go more into detail on this part of the case.
 

 The supreme court was of opinion that it did not possess the power of so reforming the mortgage as to make it embrace the small parcels of land upon which these buildings stood, though that land was then owned by Hasbrouck and subject to his disposal. The hesitancy of the court arose out of the consideration, that the lender understood that the land conveyed by .the Poughkeepsie bank embraced the whole promises upon which he had agreed to make the loan ; and that inasmuch as the land thus conveyed was included in the mortgage, he obtained a lien upon the whole subject contemplated by the agreement, and has therefore no right to this species of redress. But the extent of the area of land was a circumstance of minor consideration compared with the buildings and improvements. Two or three acres, more or less, would vary the security only to the amount of as many hundred dollars, whereas the failure to obtain a lien on the buildings, reduced it by twice as many thousands. If the plaintiff contract
 
 *582
 
 ed for a lien restricted by the limits of the Poughkeepsie bank conveyance, he at the same time contracted for an incumbrance upon all the land upon which the enumerated buildings stood, and the latter circumstance we cannot fail to see was the one which must have operated upon his mind to assent to the transaction. It does not appear that any particular "number of acres were contracted for, or what precise area was conveyed by the mortgage'. The manner in which Hasbrouck obtained his title was a circumstance of entire indifference. It is plain that the plaintiff was mistaken and misled when he supposed that the bank conveyance was so limited as to leave out the tannery, factory, the hotel, &c.; and when he assented to have the premises contained in that conveyance transcribed into his mortgage, he acted under a fatal mistake as to the extent of the premises contained in that description. He thought, and Hasbrouck induced him to believe, and knew that he did "believe, that the lines therein mentioned, when traced on the ground, would include the tannery, factory, &c. To me it seems very plain that it is no answer to say to the plaintiff, you obtained a lien upon all the ground contained in the bank deed. He can properly reply: The deed from the bank was of no moment, except for the supposition that it covered the valuable erections which I was to obtain a' lien upon as security. The deed was used only as a convenient method of describing those premises ; but now that it appears that it only embraced a part of them, it would be inequitable to limit me to the deed which, in the actual circumstances, was used only as an instrument to deceive. The case is similar to
 
 Wiswall
 
 v.
 
 Hall,
 
 (3
 
 Paige,
 
 313,) where the defendant, being the owner of a certain lot Ho. 22, bounded on the Hudson river at the line of tide water, had obtained a grant, from the corporation of the right to erect a wharf in front of his lot, and had erected such wharf thereon. He then contracted to sell the premises to the complainant, and conveyed them as lot Ho. 22, &c., as the same was described in and had been occupied and held under a certain deed which was particularly described, executed by Van Rensselaer to MeCartan, and by the latter as
 
 *583
 
 signed to the defendant. Now this lot No. 22 did not embrace the wharf, nor was that conveyed by Van Rensselaer to McCartan, but the defendant held it under a different title, namely, the grant from the corporation. The defendant by his answer insisted, as the present defendant does, that he did not intend to sell any thing more than the lot as it originally was. The chancellor said he was satisfied from the evidence that this allegation was literally true; but he was also of opinion that the defendant knew that the plaintiff did not so understand the bargain, and that although he assented to take a- conveyance limited to the land embraced in lot No. 22, and conveyed by Van Rensselaer to McCartan, it was only because he believed that lot and conveyance embraced the wharf as well as the upland, and he decreed that the defendant should execute to the plaintiff a release of the wharf. This case is upon principle identical with the one before the court; and it is unnecessary to refer to cases to establish the familiar doctrine that where, through mistake or fraud, a contract or conveyance fails to express the actual agreement of the parties, it will be reformed by a court of equity so as to correspond with such actual agreement. The English cases have been ably digested by Chancellor Kent, and the principle has been stated with his accustomed care and accuracy in
 
 Gillespie
 
 v. Moon, (2
 
 John. C. R.
 
 585.)
 

 There is no evidence that the defendant, Mrs. Hasbrouck, was a party to the deception. Her contingent right of dower must not therefore be affected by the decree or sale of the premises not actually embraced in the mortgage.
 

 The trust deed being between husband and wife, and no consideration being shown, must be regarded as purely voluntary. As neither Mrs. Hasbrouck or the trustee are proved to have parted'with any thing to obtain that conveyance, it cannot be set up against the complainant’s equity.
 
 (Burgh
 
 v.
 
 Francis,
 
 1
 
 Eq. Cas. Ab.
 
 320,
 
 pl.
 
 1;
 
 Taylor
 
 v.
 
 Wheeler,
 
 2
 
 Vern.
 
 564;
 
 Russel
 
 v.
 
 Russel,
 
 1
 
 Bro. C. R.
 
 269;
 
 Dickerson
 
 v.
 
 Tillinghast,
 
 4
 
 Paige,
 
 215.)
 

 
 *584
 
 The judgment of the'supreme court must be reversed, and a judgment entered declaring the rights of the parties according to the principles stated in this opinion, and with the usual provision contained in a decree of foreclosure. It will direct the premises described in* the mortgage to be first sold, and the other parcels to be sold only in the event of a deficiency in the amount of principal, interest and costs, arising out of the first sale. If there should be a surplus arising out of the sales of the smaller parcels, the judgment will direct that it be retained by the sheriff to abide the further order of the court; it will direct the plaintiff’s costs in the supreme court to be paid by the defendant, Joseph 0. Hasbrouck, and no costs of any of the parties against the others to be allowed in this court. ■ Should the parties be unable to agree upon the form of judgment, it will be settled on notice by the judge by whom this opinion is prepared.
 

 Allen, J., delivered an opinion to the same effect.
 

 Gardiner, G. J., and Ruggles, Johnson and Edwards, Js., cpncurred.
 

 Parker, J., was in favor of affirmance, and Selden, J., took no part in the decision.
 

 Judgment in accordance with the foregoing opinion.