WELLINGTON E. CRIPPEN, RESPONDENT, *v.* JAMES R. BAUMES, IMPLEADED WITH JOSEPH C. FRONE, AND OTHERS, APPELLANT.

*Reformation of contract — by whom it can be enforced — bona fide purchaser — purchaser of equitable title.*

On February 21, 1870, one Reed, who was the owner of a number of pieces of land, conveyed to him by, and described in four different deeds and constituting one farm, agreed with one Frone to sell such lands to him, and take back a mortgage for part of the purchase-price. By mistake the scrivener omitted from the deed and mortgage the description of one of the lots, and the papers were executed and delivered without either party having discovered its omission. Frone took possession of all the land agreed to be sold, and subsequently pointed out the boundaries thereof to the plaintiff, assuring him that the mortgage covered the whole farm. The plaintiff thereafter purchased the mortgage from Reed, all parties being then unaware of the mistake.

In an action by the plaintiff to reform the deed and mortgage by inserting therein the description of the lot omitted, and to foreclose the mortgage as so reformed, *held,* that the relief asked for should be granted.

Prior to the bringing of this action, and after plaintiff had purchased the mortgage, one Baumes talked with Frone about purchasing the lot omitted from the description in the deed and mortgage; Frone saying that he had purchased it of Reed, and that Reed would convey it, and Reed, on Baumes application, promising to do so. Baumes subsequently became aware of plaintiff's claim to this lot, and thereafter took a deed thereof from Frone, paying $800 therefor, and subsequently and after the commencement of this action, and the filing of a *lis pendens* therein, obtained a deed thereof from Reed, but paid nothing therefor.

*Held,* that Baumes was not a *bona fide* purchaser of the lot, with respect to the plaintiff.

A *bona fide* purchaser is one who takes a legal title, without notice of conflicting equities and for a valuable consideration.

The purchaser of an equitable title takes subject to all prior equities.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

The action was brought to reform a mortgage by correcting the description thereof, and to foreclose the same as so reformed. From the findings of the court, it appears that on and before the 21st day of February, 1870, the defendant, Platt Reed, being the owner of a certain farm, consisting of about 277½ acres, agreed with the defendant, Joseph C. Frone, to sell and convey to him the farm, and to take in payment a certain house and lot of said Frone, and for the balance of the purchase-price, to take back a bond and mortgage of $5,700 on the farm so conveyed.

That the farm so to be conveyed, had been purchased by Reed in four different parcels, for which he held four different deeds of conveyance.

That on the said 21st day of February, 1870, the said Reed and Frone went to the office of one Hunt, a conveyancer at Otego, N. Y., and there produced the four deeds to Reed, and directed Hunt to draw a deed from Reed and wife to Frone, containing the lands described in the deeds, and to draw a mortgage from Frone and wife to Reed, for $5,700 on the same premises.

That said Hunt proceeded to draw said deed, and in so doing, by mistake, neglected to include therein the 100 acres described in and conveyed by one of said deeds, and also omitted the same from the mortgage.

That the deed and mortgage were executed and delivered without any of the parties discovering the mistake.

That Frone soon thereafter went into the possession of the whole of said 277½ acres, under said deed, and for several years continued so in possession, carrying on and farming the whole thereof.

That Reed being desirous of selling and realizing upon said mortgage, subsequently, and about January, 1873, applied to the plaintiff to purchase the same, and to induce him to do so represented that the mortgage conveyed the whole farm occupied by Frone, requesting the plaintiff at the same time to go and look at the land. That plaintiff went to the farm and saw Frone, who was still in possession and working the farm, and Frone thereupon pointed out to the plaintiff the boundaries of the farm, including the said 100 acres, and assured the plaintiff that the mortgage covered the whole farm, and covered from 250 to 300 acres.

That the mortgage describes a large number of parcels of land separately, not anywhere giving the whole number of acres, and that plaintiff is somewhat illiterate, and was unable to read, and did not read the description in said mortgage.

That subsequently plaintiff, believing and relying upon the representations of Reed and Frone that said mortgage covered the whole farm, purchased the same, paying the full consideration therefor.

That the deed from Reed to Frone, and the mortgage were, within a few days after their execution and delivery, duly recorded in Delaware county clerk's office, and the said assignment of said bond and mortgage was also recorded in said clerk's office on the 9th day of April, 1873.

That the plaintiff first learned the 100 acres had been omitted in the deed from Reed to Frone and from said mortgage, on April 1st, 1874.

That Frone, sometime in March, 1875, offered to sell to the defendant, James R. Baumes, the said 100 acres, stating to said Baumes that the same was not covered by the said plaintiff's mortgage; and also stating to him that it was not included in the deed from Reed to him; but stating that he had purchased it of Reed, and that Reed would execute a conveyance of the same at any time. That said Baumes then examined the record of said deed

and mortgage, and found that said 100 acres was not included in either; that he then saw said Reed, who told him that he would convey to him, said Baumes; but there was no consideration either paid or promised by said Baumes for such promise to convey.

That Frone thereupon, and on the 29th day of March, 1875, executed and delivered to Baumes a quit-claim deed of said 100 acres for the consideration therein expressed of $800 (which deed was never recorded) which $800 was paid in part by his note of $100, payable in thirty days, which was paid when it became due, and the balance by the transfer and assignment of good, valid securities.

That Baumes had, prior to that time, been drawing some writings between plaintiff and Frone, to secure the interest on said mortgage and was then informed by the plaintiff and Frone, or by one of them in the presence of the other, that said mortgage covered the whole of said farm.

That this action was commenced on or about the 5th day of June, 1875, to obtain a reformation of said deed from Reed to Frone, and of said mortgage, by correcting said mistake and including said 100 acres, and to foreclose the mortgage as reformed. That the complaint and notice of *lis pendens*, stating the object of the action, and the lands affected thereby, including said 100 acres, was duly filed and recorded in the office of the clerk of Delaware county.

That subsequently, with full knowledge of the commencement of this action as aforesaid, and subsequent to the filing of said complaint and *lis pendens*, the said Reed on or about the 15th day of June, 1875, executed and delivered a quit-claim deed of said 100 acres to said James R. Baumes, without any consideration having been paid therefor or promised to be paid; but that said deed was never recorded. That said Baumes, at the time of taking said deed, had full notice and knowledge that said action had been commenced and said *lis pendens* filed, and had seen and read the complaint in this action, and knew of the equities claimed by the plaintiff.

That said James R. Baumes afterwards went into possession of said 100 acres, and he and his wife were subsequently brought in and made parties, defendant in this action.

*W. H. Johnson*, for the appellant. If any right to ask such reformation existed in Reed, the original mortgagor, the plaintiff has not succeeded to it. Such equity was personal to Reed, or at most, could only have been transferred by special assignment. (*Birdsall* v. *Fuller*, 11 Hun, 207; *Eicks* v. *Cleveland*, 39 Barb., 573.) The authorities holding that a transfer of a note or bond for unpaid purchase-money does not pass the vendor's lien, are decisive against the plaintiff. (*White* v. *Williams*, first page, 502; *Battle* v. *Coit*, 26 N. Y., 404; *Halleck* v. *Smith*, 3 Barb., 267; *Perry on Trust*, § 238; *Armstrong* v. *Cushing*, 43 Barb., 340; *Byron* v. *Butts*, 27 Barb., 503; *Coan* v. *Osgood*, 15 Barb., 588; 1 Greenleaf's Evidence, § 189; *Cady* v. *Potter*, 55 Barb., 453; *Stephenson* v. *Burton*, 15 Abb., 352; *Mills* v. *Van Voorhis*, 23 Barb., 125.) Baumes was a *bona fide* purchaser for value. (*Jones* v. *Smith*, 1 Hare's Chanc. R., 44; 1 Phillips' Chanc. R., 244; page 253, *et seq.*; *Ware* v. *Egmont*, 31 Eng. L. & Eq., 89, 97; *West* v. *Reed*, 2 Hare's C. R., 249; *Buttrick* v. *Holden*, 13 Metcalf, Mass., 355; *Hine* v. *Dodd*, 2 Atkyns, 275; *Acer* v. *Wescott*, 46 N. Y., 384.) If any information on the subject was given, it was given to him, not as a purchaser or a person contemplating a purchase, but as a conveyancer. The last suggestion is a conclusive answer to a claim of notice. (*Miller* v. *Illinois Central R. R. Co.*, 24 Barb., 312.)

*C. H. Graham and E. Countryman*, for the respondent. A written instrument may be reformed upon parol evidence of a mistake. This can be done in an action between the parties to the contract, or their privies. (*Cady* v. *Potter*, 55 Barb., 463; Willard's Eq. Jurisprudence, 64; *De Peyster* v. *Hasbrouck*, 11 N. Y., 582; *Barlow* v. *Scott*, 24 N. Y., 44; *Rider* v. *Powell*, 28 N. Y., 310 to 315; 1 Seldon, 357; 8 Cow., 195; 1 Wend., 355; 48 Barb., 225; 83 N. Y., 676; 60 id., 430, 298; 3 Barb., 50; 2 Johns. Ch., 585; 17 John., 377; 45 Barb., 478.) The assignee of a mortgage is in effect the grantee of the mortgagee's interest in the land, and is as much in privity as the grantee of the grantees. (2 Greenleaf's Evidence, § 189; 3 Barb., Ch., 647, and cases there cited.) The plaintiff is entitled to the relief for which he asks, and which the judgment of the court has so far given him. A

clear mistake of facts was proved, and the mistake was mutual. The testimony of all the witnesses shows this which entitles the plaintiff to the relief asked for. (*De Peyster* v. *Hasbrouck*, 1 Kern., 582; *Bush* v. *Hicks*, 60 N. Y., 298; *Happough* v. *Strubble*, 60 id., 430.) Also where contract was by parol. (*Rider* v. *Powell*, 28 N. Y., 310.)

LEARNED, P. J.:

The agreement was for the sale of one farm, as a whole, although the description was to be taken from several deeds of distinct parcels. The omission of one of these parcels from the deed and from the mortgage was a mere mistake of the scrivener, and not noticed by the parties at the time. The case is one of error in the description, and is within the principles of equitable relief, as administered in this State. As between Reed and Frone, the deed and the mortgage should be reformed, according to the real agreement. The defendant suggests that the intent of the parties is in fact carried out in the mortgage, because it does truly convey the premises deeded that same day by Reed to Frone. But this fact only shows that the same error was common to both instruments. Neither expressed the real agreement. Both should be reformed. (*Johnson* v. *Taber*, 10 N. Y., 319.)

The defendant urges that the original agreement was by parol; that, therefore, to re-form the instruments is to enforce a contract void by the statute of frauds. It is not necessary to inquire how much force this position would have, if there were a parol contract to sell two independent and distinct parcels of land, and if the deed should, by mistake, convey but one of them. (See *Smith* v. *Underdunck*, 1 Sand. Ch., 579.) It is enough that, in the present case, the agreement was for the sale of one farm, and the mistake was the omission of a part of the description; and the purchaser has gone into possession. Equity will relieve, although the original contract was by parol. (*De Peyster* v. *Hasbrouck*, 11 N. Y., 582; *Rider* v. *Powell*, 28 id., 310; *Wiswall* v. *Hall*, 3 Paige, 313.)

The case of *Glass* v. *Hulbert* (102 Mass., 24), is cited by the defendant as in conflict with these views. But it will be seen by reference to that case, that the equity power of the Massachusetts

court is somewhat limited by statute, and that the views there held are shown not to be in harmony with the decisions of this State. The statute of frauds in this State expressly declares that it is not to abridge the powers of courts of equity to enforce specific performance. (2 R. S., m. p., 135, § 10.)

This relief of the reformation of instruments is granted in favor of privies, as well as parties. When Reed assigned the mortgage to the plaintiff, he stated that it covered the whole farm. The plaintiff went to the farm and saw Frone in possession and working it. Frone himself pointed out the boundaries to the plaintiff, and represented to him that the mortgage covered the whole of the farm. The plaintiff, believing these representations, purchased the mortgage, under the supposition that it covered the whole farm. Every reason therefor of equity and justice gives to the plaintiff the same rights against Frone which Reed had for the reformation of the mortgage. The question then remains, whether Baumes is such a *bona fide* purchaser that he can defeat the plaintiff's equity.

The court finds that Baumes knew, when he purchased, that the plaintiff claimed that his mortgage covered the whole farm, including the part purchased by Baumes. This knowledge prevents him from being a purchaser in good faith. He urges, however, that the information which he had on the subject was not such as to charge him with knowledge. But the circumstances surrounding his purchase are, of themselves, suspicious. The price which he paid was less than the value of the land. He did not pay in cash, but in securities—one of them a second mortgage. He knew that the piece of land which he purchased was part of the whole farm. Furthermore, he knew, before he purchased, that Frone had no legal title to that part of the farm; and he knew, therefore, that he was buying only an equitable right. For this reason, he was not a *bona fide* purchaser; for, knowing that he was buying only an equitable right, he was chargeable with knowledge that there might be other equities superior to his. Frone, it is true, had said that he had bought this lot of Reed, and that Reed would convey it; and Reed, on Baumes' application before his purchase, had promised to do so.

But even these facts might have excited his suspicion. He knew

that Frone was in possession of the whole farm, by purchase from Reed. He was informed by Frone that the parcel in question was not covered by the deed from Reed, but that Reed would convey, and that Frone had bought the parcel. He knew that Frone had given back a mortgage to Reed, which Reed had assigned to the plaintiff; and, at one time, he drew an assignment of the crops, to be executed by Frone to the plaintiff, as further security.

We are satisfied with the correctness of the finding that the plaintiff had been informed that the mortgage covered the whole farm And it seems to us probable that the defendant knew, or had reason to believe, when he made his purchase from Frone, that the omission of this parcel of land from the deed, and from the mortgage, was an accident, which Reed was ready to correct. But, at any rate, he knew that Frone had no legal title, and that all which he was obtaining by the purchase was Frone's equitable rights. A *bona fide* purchaser is one who takes a legal title, without notice of conflicting equities, and for a valuable consideration. Whatever the defendant paid, he paid only for such equity as Frone might have against Reed; and that equity was subject to the counter equity in favor of Reed, and of Reed's assignee, the plaintiff. Whenever Frone should demand a deed from Reed of the omitted land, Reed might demand in return from Frone an extension of the original mortgage over the omitted parcel. If Frone, or if his assignee, asked equity, he was bound to do equity.

The defendant never obtained the legal title until after this action was commenced, and after he had both constructive and actual knowledge of its commencement; and the deed which Reed then executed to him was without any valuable consideration. Therefore, he gained nothing thereby.

It may be said that the defendant, before purchasing from Frone, obtained Reed's promise to convey to him; that Reed had but the naked title as *quasi* trustee for Frone; and hence, that the defendant is entitled to the benefit of his purchase from Frone. However true this might be as against Reed (if the defendant had had no notice of the mortgage claim), it cannot avail against the plaintiff. Reed's promise to convey, based on no consideration, could not deprive the plaintiff of his then existing equity.

The defendant asks that he shall be protected to the extent of

payments made by him before notice. But he had notice before he made any payments, as is found by the court, and, as we think, is sustained by the case.

The judgment should be affirmed, with costs.

Present — LEARNED, P. J., BOARDMAN and TAPPAN, JJ.

Judgment affirmed, with costs.