## Ezell v. Peyton et al., Appellants.

### Division Two, June 2, 1896.

**Deed**: MISTAKE: MISREPRESENTATION: REFORMATION. Where a grantor pointed out to the grantee land that was inclosed by a fence, and sold and conveyed the same as one lot and a portion of another, when there was in fact a part of a third lot owned by the grantor included within the inclosure, equity will reform the deed so as to embrace all of the land pointed out and represented as being inclosed by the fence, whether the misdescription was the result of mutual mistake or of intentional misstatement on the part of the grantor.

*Appeal from Cass Circuit Court.*—HON. W. W. WOOD, Judge.

AFFIRMED.

*Burney & Burney* and *Noah M. Givan* for appellants.

(1) There is no evidence that any of the purchasers in this case relied upon the statements of E. N. Peyton as to where the lines were. The purchasers had equal means with the sellers of information as to where the lines were. Neither law nor equity will afford relief where the subject-matter of dispute, which was the sale of land, was equally known to both parties, or about which both had equal means of information, and in regard to which they were equally negligent. *Henderson v. Dickey*, 35 Mo. 120; *Dunn v. White*, 63 Mo. 185; *Morse v. Rathburn*, 49 Mo. 91; *Langdon v. Greene*, 49 Mo. 365; *Key v. Jennings*, 66 Mo. 369; *Clarke v. Baird*, 7 Barb. 65, affirmed, 9 N. Y. 183; *Brooks v. Hamilton*, 15 Minn. 26; *Brown v. Fagin*, 71 Mo. 563. (2) The deeds offered in evidence are complete within themselves. They constitute no evidence of intention to

convey other land. The alleged agreement, if there was any, to convey part of lot 4, in block 29, is a parol agreement and void. A parol agreement for the conveyance of land can not be enforced. *Glass v. Hurlburt*, 102 Mass. 24; *Steadwell v. Anderson*, 31 Conn. 139; *Elder v. Elder*, 10 Me. 80; *Toops v. Snider*, 70 Ind. 554. (3) Every presumption is in favor of a deed whose terms are unequivocal, being a correct expression of the intention of the parties, and the description in a deed will be reformed for mistake, only where the evidence is most clear, positive, decisive, unequivocal, and convincing. *Turner v. Shaw*, 96 Mo. 26; *Modrell v. Riddle*, 82 Mo. 31, and cases cited; *Bunse v. Hager*, 47 Mo. 270; *Able v. Ins. Co.*, 26 Mo. 56; *Barker v. Hull*, 71 Wis. 368; *Southern v. Curley*, 104 N. Y. 148; *Bartlett v. Brown*, 121 Mo. 353; *Sweet v. Owen*, 109 Mo. 7; *Cooper v. Deal*, 114 Mo. 527; *Stiles v. Willis*, 66 Md. 485. (4) The decree is erroneous as to John R. Dolan, defendant, who had purchased the strip of land in controversy from E. N. Peyton in his lifetime. There is no finding by the court that he was a purchaser with notice of plaintiff's equities, and no evidence upon which such a finding could have been based. 2 Pomeroy's Eq. Jur., sec. 740; *Drey v. Doyle*, 99 Mo. 459; *Fox v. Hall*, 74 Mo. 315.

*W. L. Jarrott* for respondent.

(1) "The law is certainly well settled that a court of equity will correct mistakes in deeds as between the parties thereto and those holding under them with notice." *Seiberling, Miller & Co. v. Tipton*, 113 Mo. 381. (2) It is the province of the court to enforce the contracts and conveyances of the parties, not to make or alter them; and when, by mistake, the contract is not expressed in such terms as to have the force and effect the parties intended, it is the duty of the court

to correct the mistake. *Leitensdorfer v. Delphy*, 115 Mo. 161; *Hook v. McClure*, 32 Mo. 405; *Young v. Coleman*, 43 Mo. 179, and same case, 48 Mo. 259; *Cassidy v. Metcalf*, 66 Mo. 519; *Griffith v. Townley*, 69 Mo. 14; *Summers v. Coleman*, 80 Mo. 488. (3) A mutual mistake of grantor and grantee in supposing that land staked and pointed out to the grantee all belonged to the grantor, while in fact it included a strip belonging to an adjoining owner, whose land was made a boundry by the description of the premises in the deed, entitles the grantee to have the deed reformed so as to include such strip, and then to damages for breach of the covenants of warranty and for quiet enjoyment by the reason of the failure of title to such strip. *Butler v. Barnes*, [Conn.] Lawyer's Reports Annotated, Book 12, page 273; *Johnson v. Tabor*, 10 N. Y. 319; *DeReimer v. De Cautillon*, 4 Johns. N. Y. Ch. 85; *Wiswall v. Hall*, 3 Paige (N. Y.), 313; *Diggs v. Kurtz*, 132 Mo. 250. (4) When reformation is sought of a deed which, through fault or mistake, conveyed less land than was orally bought and paid for, the case does not stand as if there were no deed; and the error may be corrected without proof of such part performance compelling a conveyance of the whole land when no part of it has been conveyed. *Hitchens v. Pettingill*, 58 N. H. 386.

BURGESS, J.—This is a suit in equity to reform two deeds, one dated October 16, 1889, and executed by E. N. Peyton and wife to John L. Harrison and John Hamilton; the other dated November 27, 1889, executed by said Harrison and Hamilton and their wives to plaintiff, both deeds conveying lot 3 and the west half of lot 2 in block 29, in Freeman, Cass county, Missouri.

The petition in effect avers that sixteen and one half feet off the east side of lot 4 (which lies imme-

diately west of lot 3 in said block), was also sold and intended to be conveyed by said deeds; but that by mutual mistake of the parties thereto, as well also as of the scrivener who drew them, they were incorrectly written, and did not express the mutual intent of the parties.

The defendants with the exception of the grantors in the deed to plaintiff and John R. Dolan are the heirs of said E. N. Peyton now deceased. Dolan was made a party defendant after the suit was commenced; exactly how, or for what purpose, is not disclosed by the record, other than there seemed to be an impression that he owns that part of lot 4 in question.

The answer is a general denial.

From a judgment and decree correcting the deeds as prayed for, defendants appealed.

At the time of the sale of the property and the execution of the deed therefor by Peyton to Harrison and Hamilton he was the owner of lots 2, 3, and 4, in the north half of block 29.

The following plat will show the location of the lots, as well also as the location and boundary of that portion in controversy.

North Half of Block 29..

The dotted line running north and south through lot 2 is the east line of the property described in the deeds, and the dotted parallel line in lot 4 represents the true western line of the land that plaintiff claims to have purchased, including the land described in the deeds. So that the real controversy is over that part of lot 4 lying east of the dotted line running north and south through that lot.

When Harrison and Hamilton bought from Peyton, all of that part of lot 4 east of the dotted line, and lot 3, and the west half of lot 2, were inclosed by a fence, and so remained until after plaintiff's purchase from them.

There was also on the property described in the deed to them a three room frame dwelling house. At the same time there were on the land in dispute a small stable and cistern which were used in connection with the house, and the fence, which then stood on the dotted line in lot 4, was pointed out to them by Peyton as being the western boundary line of the land.

Hamilton testified that during his negotiations for the property, he and Peyton were on the west fence, and he said to Peyton, "Ed, I want to know how much land there is here, how much is it;" and Peyton said "there is a lot and a half of a lot;" and Peyton further said, "it is all inside of this fence, inclosed in this fence; what you see in here embraces that;" and, Hamilton testified, "I took it for granted that that fence was around a lot and a half of ground."

Hamilton also testified as follows:

"*Q.* Did he tell you what lot and a half it was? *A.* Yes, sir; just what was described in the deed; then I looked at the deed and found it corresponded with what he told me about it.

"*Q.* What did he tell you? *A.* He told me all of lot 3 and half of lot 2, in block 29; that is the way

I understood it; I did not know anything about the lines, how they run, and I did not take any time to investigate it; and I took it for granted that the fence was on the line; that west fence was on the line; and I thought all of the fences were as near on the line as we get them in Freeman, and so we got the deed, and after that—

"*Q.* Tell the court whether or not there was anything said about selling you any more land than lot 3 and the west half of lot 2? *A.* No, sir; not at that time."

He further testified that when he and Harrison purchased the property they were put in possession by Peyton of all that was inclosed by the fence and that they placed plaintiff in possession of the same property when they sold to him.

It does not appear that Peyton knew where the lines between the lots were, but that he sold to Hamilton and Harrison all the land inclosed by the fence, and that they so bought not only seems clear from the evidence of Hamilton, but is shown by all the evidence in the case. And it makes no difference so far as their rights, and plaintiff who claims under them, are concerned, that the deeds do not embrace the land actually sold.

Hamilton and Harrison did not buy the land as described in the deed to them, but bought the land that was inclosed by the fence which they and Peyton understood to be correctly described by the deed from himself and wife to them, when it was not. It was a mutual mistake between the parties to the deed from Peyton to Harrison and Hamilton in that the land in question is not a part of lot 3 and the west half of lot 2, and the same mistake entered into the sale of the lot by Harrrison and Hamilton to plaintiff. The grantees in both deeds had the right to rely upon the statements.

and representations of their respective grantors, with respect of the boundaries of the land purchased by them. Even though the deed or deeds to Peyton for the land may have been on record, they furnished no information as to the exact location of its boundaries, and the purchasers were not in fault in relying upon his statements and representations with respect thereto, they having no reason to believe the same to be untrue.

In *Butler v. Barnes*, 60 Conn. 170, it was held that a mutual mistake of grantor and grantee in supposing land staked and pointed out to the grantee by the grantor belonged to the latter, while in fact it included a strip belonging to an adjoining owner, whose land was made a boundary by a description of the premises in the deed, entitled the grantee to have the deed reformed.

In the case in hand the land was inclosed by a fence and presents a much stronger case for equitable relief than that case did.

It is immaterial whether the error in the description of the land actually pointed out and sold was the result of intentional or unintentional mistatement on the part of Peyton as equity will afford relief as well in the one case as in the other. *Smith v. Jordan*, 13 Minn. 270; *Botsford v. McLean*, 45 Barb. 478; *Bush v. Hicks*, 60 N. Y. 298; *De Peyster v. Hasbrouck*, 11 N. Y. 582.

Our conclusion is that the evidence clearly shows that there was a mutual mistake between Peyton and Harrison and Hamilton in that the description of the land as contained in the deed by him to them, does not embrace all the land pointed out, and represented by him as being inclosed by the fence, and part of lot 3 and the west half of lot 2, and that the same mutual mistake existed in the sale and deed from Harrison and

Hamilton to plaintiff, and that he is entitled to the relief sought.   The judgment is affirmed.   GANTT, P. J., and SHERWOOD, J., concur.