WILLIAM D. GUTHRIE, Respondent, *v.* PETER MARTIN, Appellant.

*Contract of sale of real property — remedy of a vendee induced by false representations to accept a deed of part only of the land contracted to be sold.*

Where, at the time for the delivery of the deed under a contract for a sale of a parcel of land, the vendor, for the purpose of inducing the vendee to accept less land than he is entitled to under his contract, falsely represents that he has sold a portion of the premises to a third person, and the vendee, in reliance upon such representation, accepts a deed of the balance of the parcel contracted to be sold, he is equitably entitled, upon discovering the fraud, to a conveyance from the vendor of the property omitted from the deed.

If it appears that, at the time of the execution of the deed to the vendee, the third person was in possession of the premises omitted from the deed, under a valid contract of sale, the vendee, upon acquiring such third person's interest in the premises, is entitled to a conveyance thereof from the vendor, without paying any additional money.

APPEAL by the defendant, Peter Martin, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Nassau on the 9th day of October, 1901, upon the decision of the court rendered after a trial at the Nassau Special Term.

*Pierre M. Brown,* for the appellant.

*Paul E. De Fere* [*William E. Ver Planck* with him on the brief], for the respondent.

GOODRICH, P. J.:

This appeal is by the defendant from a judgment entered at the Nassau Special Term, directing him to convey to the plaintiff one hundred and sixty-four one-thousandths of an acre of land on the easterly side of Peacock lane, near Lattingtown in Nassau county. The plaintiff was the owner of certain lands on said lane, and, being desirous of acquiring an adjacent tract on the north owned by the defendant, sent his agent, Mr. Hopkins, to the defendant to buy his land. The grounds upon which the issues have been decided and the judgment directed by the court on sufficient evidence appear in the following excerpt from the decision of Mr. Justice DICKEY, who presided at the trial. Certain other facts established by the evidence have been added in parentheses:

" On or about January 16, 1900, the defendant agreed to sell to the plaintiff all the premises owned by him on the easterly side of Peacock Lane at Lattingtown, in the said Town of Oyster Bay, consisting of eight acres, more or less, for the sum of $3,000." (The plaintiff paid the defendant $150 and the latter signed the following receipt:

" Received from W. D. Guthrie the sum of one hundred and fifty dollars on account of purchase of eight acres, more or less, of land at Lattingtown, L. I., for the total of three thousand dollars.
" $150.00                                        PETER MARTIN."
" Jan. 16th, 1900.)

" At the time set for the delivery of the deed under such agreement, the defendant represented to the plaintiff that he had sold a small portion of such premises to one James Southard, and that the defendant was, therefore, unable to convey such portion of said premises to the plaintiff. This portion consisted of a small gore of land of about one-eighth of an acre." (Plot " B " on diagram *infra.*)

" The plaintiff believed such representations and acting thereon accepted from the defendant his deed conveying 7.82 acres of the

land (Plot 'A' on diagram) so agreed to be sold by defendant to plaintiff, paid said consideration of $3,000 in full, and permitted the defendant to withhold from the plaintiff the portion of said premises in this decision above described containing .164 of an acre (Plot 'B' on diagram); the defendant representing that he had sold the same to said Southard. The defendant thereupon executed and delivered the deed dated February 15, 1900, and recorded in the office of the clerk of the county of Nassau on March 8, 1900, in Liber 10 of Conveyances, at page 342. The representations of the defendant were false and known to him to be false, and they were made by him with the intent to deceive the plaintiff and to induce the plaintiff to accept said deed to 7.82 acres, and to allow the defendant to retain said parcel of .164 of an acre. In January, 1901, the defendant re-asserted to plaintiff's representative that he was still holding said parcel of land containing .164 of an acre for the said Southard and that he had determined to give said Southard further time to complete his contract for the purchase thereof.

" The plaintiff believed such representations, and acting thereon entered into negotiations with said Southard for the purchase from said Southard of the property owned by him and consisting of .086 (Plot 'C' on diagram) of an acre deeded to him by the defendant in 1888, and of said parcel containing .164 of an acre, making in all one-quarter of an acre of land. The said Southard was in possession of the whole of said one-quarter of an acre of land, including the gore of one-eighth of an acre reserved by the defendant as aforesaid from his deed to the plaintiff and said Southard confirmed the defendant's representation, and the plaintiff purchased the same from the said Southard and paid him $2,000, taking a deed conveying said .086 of an acre of land and assigning said Southard's right, title and interest under said agreement with the defendant for the sale of said .164 of an acre of land. The deed from Southard to the plaintiff is dated February 18, 1901, and was recorded in the office of the clerk of the County of Nassau, on February 23, 1901, in Liber 15 of Conveyances, at page 326. Subsequently the defendant refused upon due demand to convey the said .164 of an acre to the plaintiff as assignee or vendee of said Southard.

" The defendant having in his testimony on the trial denied that he ever had any agreement with said Southard for the conveyance

SECOND DEPARTMENT, NOVEMBER TERM, 1902.        [Vol. 76.

of said .164 of an acre of land to said Southard, it is evident that defendant's representations to the plaintiff that he had such an agreement, were made with the intent to cheat the plaintiff and to induce him to accept a conveyance of less than he was entitled to under his agreement of January 16, 1900, that is to say, to induce the plaintiff to accept a conveyance of 7.82 acres of land instead of a conveyance of 7.984 acres which then stood of record in the name of the defendant.  The plaintiff having believed such representation, and, deceived thereby, having accepted such deed for 7.82 acres of land, and paid to the defendant the full consideration of $3,000 mentioned in the agreement, is in equity entitled to a conveyance by the defendant of the land so withheld by the defendant and which constitutes said parcel containing .164 of an acre of land in this decision above described, and the defendant should convey the same to the plaintiff without any additional consideration."

A diagram will enable us to appreciate readily the location of the several parcels referred to.

The appellant's contentions are expressed in his two points: " Neither as a matter of law nor upon the facts can the judgment be sustained, either on the theory of estoppel or fraud on Martin's part." And " There was no such possession coupled with improvements of such a character as would have entitled Southard to a performance of his alleged oral contract."

Under the first point it is argued that the plaintiff, knowing the

facts, accepted a deed and thus adopted the defendant's construction of the contract of sale on which the receipt of January sixteenth was given; that there was no fraud because the defendant's position was fully explained to the plaintiff before he received the deed, and no estoppel because the plaintiff was not deceived.

The difficulty with these contentions is that they are not based on the grounds upon which the issues have been decided, above quoted.

While this court is at liberty to review and reverse a decision under the general exception of the defendant to the decision, no occasion arises in this case to differ with the decision of the learned justice.

This brings us to the question of the plaintiff's remedy. He prayed for a specific performance by the defendant of the agreement for the sale of January sixteenth, as expressed in the receipt of that date, and for the execution by him of a deed of plot " B," or, if it should be found that he had made no contract with Southard for its purchase, then that he might be decreed to be a trustee of said plot in his own wrong for the benefit of the plaintiff and be directed to convey the same to him.

The statement in the decision of the grounds of the learned justice for directing judgment in favor of the plaintiff constitutes a case peculiarly addressed to a court of equity. The defendant agreed to sell the plaintiff all the land which he owned on the easterly side of Peacock lane for $3,000. He afterwards represented to the plaintiff that he did not own plot " B " (which with plot " A " stood in his name on the record), because he had sold or agreed to sell the same to Southard. In ignorance of the nature of the arrangement between Southard and the defendant and in reliance upon the latter's representation, the plaintiff accepted a deed for plot " A " and paid the $3,000 without any deduction from the agreed price of the whole. Either the statement of the defendant was false, in which event he is bound in equity to convey this portion of the land which he owned and agreed to sell but did not convey to the plaintiff, or else he had sold the land to Southard, and the plaintiff is entitled to a conveyance from him under the covenants contained in the deed from Southard to him.

It is well settled that equity will give redress where a party has been induced by fraud to accept a conveyance of less land than he

has bargained for. *Wiswall* v. *Hall* (3 Paige, 313) is an authority peculiarly apposite to the case at bar. The syllabus concisely sets out the principle involved : " Where the vendor of a lot of land secretly intended to sell only a part of the lot, but succeeded in making the vendee understand that he was buying the whole lot, and only a part of the lot was included in the deed of conveyance, for which the vendee paid the vendor the whole consideration intended by him to be given for the whole lot, the court decreed that the vendor execute to the vendee a conveyance for the whole."

The facts in *De Peyster* v. *Hasbrouck* (11 N. Y. 582) are set out in the head note in these words : " Where a mortgage does not cover all of premises owned by the mortgagor which he by false and fraudulent representations induced the mortgagee to believe were included therein, when the latter made a loan and accepted it as security therefor, a court of equity will, as against the mortgagor or his voluntary grantee, reform the mortgage and enforce it against the part of the premises not originally embraced therein." The court said, Judge DENIO writing, " it is unnecessary to refer to cases to establish the familiar doctrine that where, through mistake or fraud, a contract or conveyance fails to express the actual agreement of the parties, it will be reformed by a court of equity so as to correspond with such actual agreement." It was adjudged that the whole property was to be subjected to the lien of the mortgage.

*Welles* v. *Yates* (44 N. Y. 525) was an action to reform a deed. It appeared that a contract was made for the sale of land with the understanding that the timber thereon was to be reserved by the plaintiff. The deed, by mistake of the plaintiff, contained no reservation of the timber, but the defendant accepted the deed, knowing that the plaintiff supposed that the timber was reserved. The court held that, although there was no charge of fraud in words, relief might be given on the ground of fraud on the part of the defendant. Referring to the general principle that there must be mutual error to authorize the interference of a court of equity, the court said (p. 529) : " The cases where this general statement is made are very numerous, and it is well said that to exercise this power, where one party only has been in error and the other has correctly understood it, would be making a new contract for the parties, and

would be doing injustice to the party who made no mistake. On this point two distinctions may be noticed: 1st. Those cases will be found to have in them the element of honesty on the part of the one correctly understanding the contract. Where two parties enter into a contract, and an error is claimed by one party to exist on an important point, which is claimed to be correct by the other party, it cannot be amended, as against the party correctly understanding it, he acting in good faith and supposing the other to have understood the contract as he did. This rule does not apply where there is fraud. Either fraud or mutual mistake will authorize the reformation."

It is distinctly held, in *Gillespie* v. *Moon* (2 Johns. Ch. 585), that equity relieves against a mistake as well as against fraud in a deed or contract in writing, and parol evidence is admissible to prove the mistake, though it is denied in the answer. Chancellor KENT said (p. 596): "It would be a great defect in what Lord ELDON terms the moral jurisdiction of the court, if there was no relief for such a case. Suppose Mrs. Mann had applied for relief, instantly, on discovery of the mistake, and immediately after the delivery of the deed; was there no power in the whole administration of justice competent to help her? It has been the constant language of the courts of equity that parties can have relief in a contract founded in mistake, as well as in fraud. The rule in the courts of law is, that the written instrument does, in contemplation of law, contain the true agreement of the parties, and that the writing furnishes better evidence of the sense of the parties than any that can be supplied by parol. But equity has a broader jurisdiction, and will open the written contract to let in an equity arising from facts perfectly distinct from the sense and construction of the instrument itself. 'It must be an essential ingredient,' says Lord THURLOW (1 Bro. 350),* 'to any relief under this head, that it should be on an accident perfectly distinct from the sense of the instrument.' I have looked into most, if not all, of the cases on this branch of equity jurisdiction, and it appears to me to be established, and on great and essential grounds of justice, that relief can be had against any deed or contract, in writing, founded in mistake or fraud. The mistake may be shown by parol proof, and the relief granted to the

---

* *Shelburne* v. *Inchiquin* (1 Bro. Ch. 350).— [REP.

injured party, whether he sets up the mistake affirmatively, by bill, or as a defense."

Similar decisions are found in *Goodenow* v. *Curtis* (18 Mich. 298) and in *Metcalf* v. *Putnam* (9 Allen, 97).

The cases thus cited afford abundant authority for the interposition of a court of equity where there have been fraudulent representations on the part of the grantor, and the grantee, relying upon such representations, has accepted a deed for a smaller amount of land than the grantor had agreed to sell him. It follows that the defendant is estopped to deny the ownership of plot "B," and is equitably bound to convey to the plaintiff what he had agreed to convey, on the ground that the deed omitted what should have been included, and that the plaintiff was induced to accept it by his reliance upon the false representations of the defendant that he had sold a part of the land to Southard.

Coming now to the second point made by the appellant, we are of opinion that under the views we have expressed it is immaterial whether or not Southard was in actual possession of plot "B" and could have enforced a conveyance of it by the defendant. But there is in fact evidence sufficient to support the claim that under some contract of sale Southard was in actual possession. His house was on plot "C." For several years he had a strawberry bed on the front part of the plot "B" which he cultivated, and he was using a shed for stabling his horses on the rear of the plot. On this stable he had a signboard of his business. There was no fence between plot "C" and plot "B." Such conditions are sufficient to support a finding that Southard was in actual possession of plot "B," and was entitled to a conveyance from Martin on payment of the price. The plaintiff has tendered a proportionate part of the average price agreed to be paid by him to the defendant for the whole premises which the defendant had agreed to convey to him, and the defendant has refused to execute a deed. A tender was unnecessary, and very properly no reference to such payment as a condition was inserted in the judgment.

The judgment was just, and should be affirmed.

All concurred.

Judgment affirmed, with costs.