GUTHRIE v. MARTIN.

(Supreme Court, Appellate Division, Second Department. November 21, 1902.)

1. SPECIFIC PERFORMANCE—FRAUD—ESTOPPEL.
   Defendant, having agreed to convey to plaintiff land composed of plats A and B, afterwards represented to plaintiff that he had sold or agreed to sell plat B to S., and was, therefore, unable to convey it to plaintiff, whereon plaintiff paid the full price agreed, and received a conveyance of plat A only. Plaintiff subsequently purchased from S. all his interest to plat B, but defendant refused to convey said plat to plaintiff. *Held*, that defendant was estopped to deny ownership of plat B, and was equitably bound to convey it to plaintiff.

2. SAME—INTERMEDIATE CONVEYANCE—POSSESSION BY PURCHASER.
   It was immaterial whether or not S. was in actual possession of plat B, and could have enforced a conveyance from defendant.

3. SAME—EVIDENCE—SUFFICIENCY.
   Evidence that plat B and plat C, which belonged to S., formed one tract with no fence between, and that S. had a house on plat C, and for several years cultivated plat B, and had a stable thereon, with his signboard on the stable, was sufficient to support a finding that S. was in actual possession, and was entitled to a conveyance from defendant on payment of the price.

4. SAME—TENDER.
   It was unnecessary for plaintiff to tender defendant a proportionate part of the purchase price agreed to be paid for the whole premises.

Appeal from special term, Nassau county.

Proceedings by William D. Guthrie against Peter Martin to compel a conveyance of land sold. From a judgment for plaintiff, defendant appeals. Reversed.

78 N.Y.S.—58

Argued ·before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Pierre M. Brown, for appellant.

Paul E. De Fere (William E. Ver Planck, on the brief), for respondent.

GOODRICH, P. J. This appeal is· by the defendant from a judgment entered at the Nassau special term, directing him to convey to the plaintiff $164/1000$ of an acre of land on the easterly side of Peacock Lane, near Lattingtown, in Nassau county. The plaintiff was the owner of certain lands on said lane, and, being desirous of acquiring an adjacent tract on the north, owned· by the defendant, sent his agent, Mr. Hopkins, to the defendant, to buy his land. The grounds upon which the issues have been decided and the judgment directed by the court on sufficient evidence appear in the following excerpt from the ·decision of Mr. Justice Dickey, who presided at the trial. Certain other facts established by the evidence have been added in brackets:

"On or about January 16, 1900, the defendant agreed to sell to the plaintiff all the premises owned by him on the easterly side of Peacock Lane, at Lattingtown, in the said town of Oyster Bay, consisting of eight acres, more or less, for the sum of $3,000. [The plaintiff paid the defendant $150, and the latter signed the following receipt: "Received from W. D. Guthrie the sum of one hundred and fifty dollars on account of purchase of eight acres, more or less, of land at Lattingtown, L. I., for the total of three thousand dollars. Peter Martin. $150.00. Jan. 16th, 1900."] At the time set for the delivery of the deed under such agreement, the defendant represented to the plaintiff that he had sold a small portion of such premises to one James Southard, and that the defendant was, therefore, unable to convey such portion of said premises to the plaintiff. This portion consisted of a small gore of land of about one-eighth of an acre. [Plot B on diagram infra.] The plaintiff believed such representations, and, acting thereon, accepted from the defendant his deed conveying 7.82 acres of the land [plot A on diagram] so agreed to be sold by defendant to plaintiff, paid said consideration of $3,000 in full, and permitted the defendant to withhold from the plaintiff the portion of said premises in this decision above described, containing .164 of an acre [plot B on diagram]; the defendant representing that he had sold the same to said Southard. The defendant thereupon executed and delivered the deed dated February 15, 1900, and recorded in the office of the clerk of the county of Nassau on March 8, 1900, in Liber 10 of Conveyances, at page 342. The representations of the defendant were false, and known to him to be false, and they were made by him with the intent to deceive the plaintiff,· and to induce the plaintiff to accept said deed to 7.82 acres, and to allow the defendant to retain said parcel of .164 of an acre. In January, 1901, the defendant reasserted to plaintiff's representative that he was still holding said parcel of land containing .164 of an acre for the said Southard, and that he had determined to give said Southard further time to complete his contract for the purchase thereof. The plaintiff believed such representations, and, acting thereon, entered into negotiations with said Southard for the purchase from said Southard of the property owned by him, and consisting of .086 [plot C on diagram] of an acre, deeded to him by the defendant in 1888, and of said parcel containing .164 of an acre; making in all one-quarter of an acre of land. The said Southard was in possession of the whole of said one-quarter of an acre of land, including the gore of one-eighth of an acre reserved by the defendant as aforesaid from his deed to the plaintiff, and said Southard confirmed the defendant's representation, and the plaintiff purchased the same from the said Southard, and paid him $2,000, taking a deed conveying said .086 of an acre of land, and assigning said Southard's right, title, and interest under said agree-

ment with the defendant for the sale of said .164 of an acre of land. The deed from Southard to the plaintiff is dated February 18, 1901, and was recorded in the office of the clerk of the county of Nassau on February 23, 1901, in Liber 15 of Conveyances, at page 326. Subsequently the defendant refused, upon due demand, to convey the said .164 of an acre to the plaintiff, as assignee or vendee of said Southard.

"The defendant having, in his testimony on the trial, denied that he ever had any agreement with said Southard for the conveyance of said .164 of an acre of land to said Southard, it is evident that defendant's representations to the plaintiff that he had such an agreement were made with the intent to cheat the plaintiff, and to induce him to accept a conveyance of less than he was entitled to under his agreement of January 16, 1900; that is to say, to induce the plaintiff to accept a conveyance of 7.82 acres of land, instead of a conveyance of 7.984 acres, which then stood of record in the name of the defendant. The plaintiff, having believed such representation, and, deceived thereby, having accepted such deed for 7.82 acres of land, and paid to the defendant the full consideration of $3,000 mentioned in the agreement, is in equity entitled to a conveyance by the defendant of the land so withheld by the defendant, and which constitutes said parcel containing .164 of an acre of land in this decision above described, and the defendant should convey the same to the plaintiff without any additional consideration."

A diagram will enable us to appreciate readily the location of the several parcels referred to:

The appellant's contentions are expressed in his two points:

"Neither as a matter of law nor upon the facts can the judgment be sustained, either on the theory of estoppel or fraud on Martin's part." And "there was no such possession, coupled with improvements, of such a character as would have entitled Southard to a performance of his alleged oral contract."

Under the first point it is argued that the plaintiff, knowing the facts, accepted a deed, and thus adopted the defendant's construction of the contract of sale on which the receipt of January 16th was given; that there was no fraud, because the defendant's position was fully explained to the plaintiff before he received the deed, and no estoppel, because the plaintiff was not deceived. The difficulty with these con-

tentions is that they are not based on the grounds upon which the issues have been decided, above quoted. While this court is at liberty to review and reverse a decision under the general exception of the defendant to the decision, no occasion arises in this case to differ with the decision of the learned justice.

This brings us to the question of the plaintiff's remedy. He prayed for a specific performance by the defendant of the agreement for the sale of January 16th, as expressed in the receipt of that date, and for the execution by him of a deed of plot B or, if it should be found that he had made no contract with Southard for its purchase, then that he might be decreed to be a trustee of said plot in his own wrong for the benefit of the plaintiff, and be directed to convey the same to him. The statement, in the decision, of the grounds of the learned justice for directing judgment in favor of the plaintiff, constitutes a case peculiarly addressed to a court of equity. The defendant agreed to sell the plaintiff all the land which he owned on the easterly side of Peacock Lane for $3,000. He afterwards represented to the plaintiff that he did not own plot B (which, with plot A, stood in his name on the record), because he had sold or agreed to sell the same to Southard. In ignorance of the nature of the arrangement between Southard and the defendant, and in reliance upon the latter's representation, the plaintiff accepted a deed for plot A, and paid the $3,000, without any deduction from the agreed price of the whole. Either the statement of the defendant was false, in which event he is bound in equity to convey this portion of the land which he owned and agreed to sell, but did not convey, to the plaintiff; or else he had sold the land to Southard, and the plaintiff is entitled to a conveyance from him under the covenants contained in the deed from Southard to him. It is well settled that equity will give redress where a party has been induced by fraud to accept a conveyance of less land than he has bargained for. Wiswall v. Hall, 3 Paige, 313, is an authority peculiarly apposite to the case at bar. The syllabus concisely sets out the principle involved:

"Where the vendor of a lot of land secretly intended to sell only a part of the lot, but succeeded in making the vendee understand that he was buying the whole lot, and only a part of the lot was included in the deed of conveyance, for which the vendee paid the vendor the whole consideration intended by him to be given for the whole lot, the court decreed that the vendor execute to the vendee a conveyance of the whole."

The facts in De Peyster v. Hasbrouck, 11 N. Y. 582, are set out in the first headnote in these words:

"Where a mortgage does not cover all of premises owned by the mortgagor, which he, by false and fraudulent representations, induced the mortgagee to believe were included therein when the latter made a loan and accepted it as security therefor, a court of equity will, as against the mortgagor or his voluntary grantee, reform the mortgage, and enforce it against the part of the premises not originally embraced therein."

The court, Judge Denio writing, said:

"It is unnecessary to refer to cases to establish the familiar doctrine that where, through mistake or fraud, a contract or conveyance fails to express the actual agreement of the parties, it will be reformed by a court of equity so as to correspond with such actual agreement."

It was adjudged that the whole property was to be subjected to the lien of the mortgage.

Welles v. Yates, 44 N. Y. 525, was an action to reform a deed. It appeared that a contract was made for the sale of land with the understanding that the timber thereon was to be reserved by the plaintiff. The deed, by mistake of the plaintiff, contained no reservation of the timber, but the defendant accepted the deed knowing that the plaintiff supposed that the timber was reserved. The court held that, although there was no charge of fraud in words, relief might be given on the ground of fraud on the part of the defendant. Referring to the general principle that there must be mutual error to authorize the interference of a court of equity, the court said (page 529):

"The cases where this general statement is made are very numerous, and it is well said that to exercise this power, where one party only has been in error and the other has correctly understood it, would be making a new contract for the parties, and would be doing injustice to the party who made no mistake. On this point two distinctions may be noticed: First. Those cases will be found to have in them the element of honesty on the part of the one correctly understanding the contract. Where two parties enter into a contract, and an error is claimed by one party to exist on an important point, which is claimed to be correct by the other party, it cannot be amended, as against the party correctly understanding it, he acting in good faith, and supposing the other to have understood the contract as he did. This rule does not apply where there is fraud. Either fraud or mutual mistake will authorize the reformation."

It is distinctly held in Gillespie v. Moon, 2 Johns. Ch. 585, 7 Am. Dec. 559, that equity relieves against a mistake as well as against fraud in a deed or contract in writing, and parol evidence is admissible to prove the mistake, though it is denied in the answer. Chancellor Kent said (page 595):

"It would be a great defect in what Lord Eldon terms the 'moral jurisdiction' of the court if there was no relief for such a case. Suppose Mrs. Mann had applied for relief, instantly, on discovery of the mistake, and immediately after the delivery of the deed. Was there no power in the whole administration of justice competent to help her? It has been the constant language of the courts of equity that parties can have relief in a contract founded in mistake as well as in fraud. The rule in the courts of law is that the written instrument does, in contemplation of law, contain the true agreement of the parties, and that the writing furnishes better evidence of the sense of the parties, than any that can be supplied by parol. But equity has a broader jurisdiction, and will open the written contract to let in an equity arising from facts perfectly distinct from the sense and construction of the instrument itself. 'It must be an essential ingredient,' says Lord Thurlow (1 Bro. 350), 'to any relief under this head, that it should be on an accident perfectly distinct from the sense of the instrument.' I have looked into most, if not all, of the cases on this branch of equity jurisdiction, and it appears to me to be established, and on great and essential grounds of justice, that relief can be had against any deed or contract in writing founded in mistake or fraud. The mistake may be shown by parol proof, and the relief granted to the injured party, whether he sets up the mistake affirmatively, by bill, or as a defense."

Similar decisions are found in Goodenow v. Curtis, 18 Mich. 298, and in Metcalf v. Putnam, 9 Allen, 97.

The cases thus cited afford abundant authority for the interposition of a court of equity where there have been fraudulent representations on the part of the grantor, and the grantee, relying upon such rep-

resentations, has accepted a deed for a smaller amount of land than the grantor had agreed to sell him. It follows that the defendant is estopped to deny the ownership of the plot B, and is equitably bound to convey to the plaintiff what he had agreed to convey, on the ground that the deed omitted what should have been included, and that the plaintiff was induced to accept it by his reliance upon the false representations of the defendant that he had sold a part of the land to Southard.

Coming now to the second point made by the appellant, we are of opinion that under the views we have expressed it is immaterial whether or not Southard was in actual possession of plot B and could have enforced a conveyance of it by the defendant. But there is in fact evidence sufficient to support the claim that under some contract of sale Southard was in actual possession. His house was on plot C. For several years he had a strawberry bed on the front part of the plot B, which he cultivated; and he was using a shed for stabling his horses on the rear of the plot. On this stable he had a signboard of his business. There was no fence between plot C and plot B. Such conditions are sufficient to support a finding that Southard was in actual possession of plot B, and was entitled to a conveyance from Martin on payment of the price. The plaintiff has tendered a proportionate part of the average price agreed to be paid by him to the defendant for the whole premises which the defendant had agreed to convey to him, and the defendant has refused to execute a deed. A tender was unnecessary, and very properly no reference to such payment as a condition was inserted in the judgment.

The judgment was just, and should be affirmed. All concur.